# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER,<br><br>        Plaintiff,<br><br>v.<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC,<br>        Defendant. | No. CV 23-26-BU-BMM<br><br>**ORDER ON MOTION<br>TO COMPEL** |

## INTRODUCTION

Plaintiff Cottonwood Environmental Law Center ("Cottonwood") filed a motion to compel Defendant Yellowstone Mountain Club ("Yellowstone Club") to stay discovery deadlines, allow Cottonwood to complete a second Rule 34 Investigation, and award Cottonwood attorney fees and costs. (Doc. 51.) Cottonwood alleges that the motion should be granted because the Yellowstone Club misrepresented material facts, defied a Court order, and unnecessarily multiplied proceedings. (Doc. 52 at 2.) Yellowstone Club opposes the motion. (Doc. 59.)

## FACTUAL BACKGROUND

Yellowstone Club is a luxury 15,200-acre residential, ski, and golf resort located in Big Sky, Montana. (See doc. 18 at 3.) The South Fork/West Fork of the Gallatin River ("South Fork") flows through the heart of Yellowstone Club. (Doc.

1

13 at 10.) Yellowstone Club irrigates its 18-hole golf course and areas off the golf course with treated effluent produced by its wastewater treatment plant and the Big Sky Water & Sewer District. (Doc. 18 at 3.) Cottonwood's Complaint alleges that Yellowstone Club has violated the Clean Water Act by discharging treated sewage into waters of the United States without a National Pollution Discharge Elimination System permit. (Doc. 13 at 11-12.)

## LEGAL STANDARD

A court possesses broad discretion to manage discovery. *Kelley v. Billings*, No. CV 12-74-BLG-RFC-CSO, 2013 U.S. Dist. LEXIS 50370, at *3 (D. Mont. April 8, 2013) (citing *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012)). A motion to compel may be filed when a party disagrees with the objections raised by the other party and wants to compel more complete answers. *Nei v. Travelers Property Cas. Co. of Am.*, 326 F.R.D. 652, 656 (D. Mont. 2018). A court can compel the production of evidence within the limits of Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b)(1) permits discovery of any nonprivileged matter that would be relevant to any party's claim or defense and would be proportional to the needs of the case. Evidence need not be admissible to be relevant, and thus discoverable. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"Once a party establishes that a discovery request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be

allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Schulz v. Mt. West Farm Bureau Mut. Ins. Co.*, No. CV 20-88-M-DLC, 2021 U.S. Dist. LEXIS 18944, at *5 (D. Mont. Feb. 1, 2021) (quoting *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 559–60 (S.D. Cal. 2019)). The movant must have conferred or attempted to confer in good faith with the party failing to respond to the discovery requests prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1).

A party may be allowed onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it. Fed. R. Civ. P. 34(a)(1)(A). The request should be kept within the scope of Fed. R. Civ. P. 26(b)(1). A party may move for an order compelling disclosure or discovery upon notice to other parties and all affected persons. Fed. R. Civ. P. 37(a)(1). The motion must include a certification that the movant has conferred in good faith or attempted to confer with the person or party failing to make disclosure or discovery to obtain it without court action. Fed. R. Civ. P. 37(a)(2)(B).

## DISCUSSION

### I. Cottonwood's Request to Stay Discovery.

Cottonwood seeks an order granting a request to stay discovery to allow more time to sample water on Yellowstone Club's property and view drainage areas. (Doc.

52 at 9-10.) Cottonwood alleges the stay of discovery will not interfere with the February 2026 trial date. (*Id.*) Yellowstone Club argues that it would not be feasible to commence another dye study of the type that Cottonwood requests until June or July of 2025. (Doc. 59 at 24.) Discovery currently closes on July 30,2025. (Doc. 44 at 2.) Yellowstone Club argues that Cottonwood's request represents a de facto motion to amend the scheduling order. (Doc. 59 at 24.)

Cottonwood seeks to resample three locations: 1) the hole four water hazard ("hole four pond"); 2) the community (clubhouse) pond; and 3) the "Crushmore area." (Doc. 52.) The Court believes that Cottonwood has had ample opportunities to investigate the Yellowstone Club property and properly can limit Cottonwood's further investigation so that it will not interfere with current trial deadlines. Discovery shall continue and Cottonwood's future access to Yellowstone Club property will be discussed below.

**II. Cottonwood's Request for Second Rule 34 Investigation.**

Cottonwood requests that the Court order Yellowstone Club to allow access to Cottonwood to conduct a dye tracer tests on the clubhouse pond and the hole four pond. (Doc. 52 at 9.) Yellowstone Club contends that a dye test is not necessary because the samples taken at the hole four pond and the clubhouse pond on August 20, 2024, indicated no presence of treated effluent. (Doc. 59 at 17-18.) Yellowstone Club further asserts that it stocks the clubhouse pond with westslope cutthroat trout,

4

and that the clubhouse pond never has been filled with treated effluent. (Doc 59 at 18; Doc. 59-1 at 7.)

The parties submitted differing conclusions from their expert witnesses. Cottonwood's expert, Patricia Glibert ("Glibert"), opined that the clubhouse pond and hole four pond "more likely than not contains treated effluent." (Doc. 52-2 at 2.) Barry Dutton ("Dutton"), a soil scientist, concluded that "wastewater has been applied at rates that exceed the ability of plants to use at the Crushmore Site." (Doc. 63-6 at 2-3.) Yellowstone Club's experts, Rich Chandler ("Chandler") and David Tooke ("Tooke"), disagree and say it is not possible to come to those conclusions based on the reported data. (Doc. 59-1;59-6.)

Chandler notes that Yellowstone Club fills the clubhouse pond from groundwater supply wells. (Doc. 59-1 at 8.) Chandler concedes that the clubhouse pond and the hole four pond may receive contributions of substances carried by runoff from the golf course, roads, parking lots, residential properties, among other things. (*Id*. at 10.) Tooke argues that the nitrogen isotope data do not support Glibert's conclusion that the clubhouse pond and hole four pond contain treated effluent. (Doc. 59-6 at 4.)

The Court recognizes that the hole four pond and the clubhouse pond have the potential to be filled with treated effluent because both potentially are hooked to the

irrigation system. Yellowstone Club's irrigation system uses treated effluent from the reclaimed water storage pond at the top of the Crushmore area. (Doc. 59 at 19; Doc 59-1 at 8-9.) An overflow drain on the hole four pond drains into an area that sits more than 2,000 feet above the South Fork of the Gallatin. (Doc. 59 at 19.) The Court further recognizes the infeasibility of stocking the clubhouse pond with westslope cutthroat trout in a pond filled with treated effluent. The Court agrees with Yellowstone Club's claim that any nitrogen isotopes discovered in the clubhouse pond likely result from the presence of wildlife in and around the clubhouse pond and potential run-off from other sources. The Court rejects the notion presented by Cottonwood at the hearing on this matter that Yellowstone Club drained the clubhouse pond of treated effluent and filled with fresh water and westslope cutthroat trout before Cottonwood conducted its testing of the water in the clubhouse pond. The Court fails to see sufficient evidence to justify another dye test in the clubhouse pond.

Based on the disagreements and differences in opinion between the experts, limiting the scope of the second rule 34 investigations proves appropriate. Yellowstone Club has accommodated Cottonwood on numerous occasions to sample locations on the golf course, conduct dye tracer studies, and inspect Yellowstone Club's property. Cottonwood has brought four different experts (Trevor Osorno, Patricia Glibert, Barry Dutton and Tim Covino) to sample and

6

inspect Yellowstone Club's property.

The Court understands that sampling may take multiple hours and requires significant coordination among the parties. The Court previously has ordered Yellowstone Club to allow same day access to Cottonwood on at least two occasions. (Docs. 48 and 50.) The parties entered into an access agreement outlining the terms of access on August 19, 2024. (Doc. 59-4.) Yellowstone Club restricted access based on that agreement and the fact that Cottonwood's experts were not available on certain days. The Court will require the parties to renew an access agreement far in advance so that any issues with logistics may be resolved. Chandler anticipates a dye tracer study would not being feasible until June or July of 2025. This circumstance allows the parties at least six months to establish an access plan and arrange a site inspection that would be fair, complete, and final.

The Court will allow Cottonwood to conduct a dye tracing study on the hole four pond only and to sample and/or inspect only the underdrain and related drainage in the Crushmore area. Cottonwood was prohibited from inspecting the underdrain in the Crushmore area (Doc. 63 at 2), and potentially relevant evidence related to the connectivity of the hole four pond and natural streams may exist. The Court will not allow Cottonwood to dye the clubhouse pond or have further access to it.

### III. Cottonwood's Request for Attorney's Fees and Costs.

A district court must not grant the movant's cost and attorneys' fees for a motion to compel if the nonmovant's objection was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Cottonwood argues that Yellowstone Club has multiplied proceedings and defied the Court's order to allow Cottonwood to view the area around the effluent holding pond at the top of the Crushmore area. (Doc. 63 at 16.) The Court understands the unfortunate vagueness of the previous minute entries relating to the access agreements and declines to hold Yellowstone Club liable for misinterpreting the entries. The Court declines to conduct any more informal proceedings in this matter to resolve potential discovery disputes or logistical issues. All future proceedings related to discovery disputes or logistical disputes shall be conducted on the record and by formal motion.

The parties entered into an access agreement on August 19, 2024. (Doc. 59-4.) The agreement gave considerable power to Yellowstone Club to control the date, time, and place of sampling and inspection of the property. Yellowstone Club restricted access of Cottonwood's experts, Osorno and Glibert, after the Court had directed Yellowstone Club to allow Cottonwood to "view the effluent holding pond and area around today." (Doc. 50.) Yellowstone Club limited the inspection to the areas that previously had been inspected by Dutton. The executed access agreement between the parties and the vagueness of the Court's previous orders caused the

8

scope of the Rule 34 investigation to remain unclear. An award of attorney's fees and costs would be unjust, given Yellowstone Club's justified objection to access, and Cottonwood's need for flexibility in allowing its experts to appear on dates that differed from those previously agreed by the parties.

## CONCLUSION

The Court grants, in part, Plaintiff's Motion to Compel (Doc. 51.) Each party shall bear its own fees and costs associated with this order, the hearings related to it, and the briefing. The Court cautions the parties that it would be inclined to award attorney's fees and costs if further proceedings prove necessary to resolve these matters.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiffs' Motion to Compel (Doc. 51) is **GRANTED in part and DENIED in part,** as follows:

    a. Cottonwood shall be allowed to conduct a dye tracer study on the hole four pond on Yellowstone Club's golf course.

    b. Cottonwood shall be allowed to inspect, study, and sample the underdrain and associated drainage in the Crushmore area. The area can be further identified in Figure 7 and Figure 8 of the Dutton Report. See Doc. 63-6 at 10-11.

    c. Cottonwood shall not be allowed to inspect the entire 36-acre Crushmore area. The parties shall agree on the area within Crushmore to be inspected.

    d. Cottonwood shall not be allowed to conduct a dye tracer study on the clubhouse pond on Yellowstone Club's golf course.

    e. The parties shall meet and confer and submit to the Court for its approval a detailed access agreement setting forth the dates and times for Cottonwood to access Yellowstone Club property, the areas to be accessed, and the activities to be undertaken on those dates, no later than January 31, 2025. All activities by Cottonwood on Yellowstone Club property shall be completed no later than July 1, 2025.

    f. The Court will consider proposed amendments to the scheduling order, as needed, once the parties have submitted the access agreement.

    g. Each party shall bear its own attorney's fees and costs.

DATED this 2nd day of January, 2025.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court