IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER,<br><br>              Plaintiff,<br><br>   v.<br><br>YELLOWSTONE MOUNTAIN CLUB, LLC,<br>              Defendant. | No. CV 23-26-BU-BMM<br><br>ORDER |

## INTRODUCTION

Defendant Yellowstone Mountain Club ("Yellowstone Club") filed a motion to restrict extra judicial statements made by Plaintiff Cottonwood Environmental Law Center ("Cottonwood") and its counsel John Meyer ("Meyer"). (Doc. 55.) Cottonwood alleges that its statements are protected by the First Amendment of the U.S. Constitution and allowed under the exceptions listed in American Bar Association ("ABA") Model Rules of Professional Conduct Rule 3.6(b) (Doc. 60 at 2-3.)

## FACTUAL BACKGROUND

Defendant Yellowstone Club is a luxury 15,200-acre residential, ski, and golf resort located in Big Sky, Montana. (See doc. 18 at 3.) The South Fork/West Fork of the Gallatin River ("South Fork") flows through the heart of the Yellowstone

1

Club. (Doc. 13 at 10.) Yellowstone Club irrigates its 18-hole golf course and areas off the golf course with treated effluent produced by its wastewater treatment plant and the Big Sky Water & Sewer District. (Doc. 18 at 3.) Cottonwood's complaint alleges Yellowstone Club has violated the Clean Water Act by discharging treated sewage into waters of the United States without a National Pollution Discharge Elimination System permit. (Doc. 13 at 11-12.) Cottonwood is an environmental non-profit organization dedicated to protecting the people, forests, water, and wildlife of the West by enforcing environmental laws on behalf of its members. (Doc. 13 at 2.) Meyer has used the platform of Cottonwood's social media accounts to "update recent developments regarding Cottonwood's legal cases." (Doc. 60 at 5.)

## LEGAL STANDARD

"Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved." Model. R Pro. Cond. 3.6 cmt. 1 (ABA 2023). Rule 3.6 of the Montana Rules of Professional Conduct ("MRPC") is identical to the widely accepted ABA Model Rules of Professional Conduct:

Rule 3.6 – Trial Publicity

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows

or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Mont. R. Pro. Cond. 3.6(a).

In determining whether a lawyer's statements run the risk of materially prejudicing the case at hand, a court considers such factors as evaluating the statements themselves, the timing of the challenged statements, and whether the statements were published in the jury pool area. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1044 (1991). Furthermore, Rule 3.6 also lists various exceptions:

> (b) Notwithstanding paragraph (a), a lawyer may state:
>
> (1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
>
> (2) information contained in a public record;
>
> (3) that an investigation of a matter is in progress;
>
> (4) the scheduling or result of any step in litigation;
>
> (5) a request for assistance in obtaining evidence and information necessary thereto;
>
> (6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

Mont. R. Pro. Cond. 3.6(b)-(c).

The Ninth Circuit has stated that orders prohibiting a party's attorney from making statements to the media are "properly characterized as a prior restraint" on speech. *Levine v. U.S. Dist. Court*, 764 F.2d 590, 595 (9th Cir.1985). "Prior restraints on speech are disfavored and carry a heavy presumption of invalidity." *Greater Los Angeles Agency on Deafness v. Cable News Network*, 742 F.3d 414, 430 (9th Cir. 2014) (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009)). The party seeking a protective order "has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003))."Speech [that is] otherwise entitled to full constitutional protection may nonetheless be sanctioned if it obstructs or prejudices the administration of justice." *Standing Committee on Discipline of*

*U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1442 (9th Cir. 1995).

The U.S. Supreme Court also has determined that a more lenient standard applied for prior restraints when restricting the speech of lawyers. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 601 n.27 (1976) (citation and alteration omitted)). Lawyers have access to special information through discovery and client communications. Access to this information by the lawyers means that a lawyer's extrajudicial statements may pose a threat to the fairness of a pending proceeding, and that a lawyers' statements are likely to be received as especially authoritative. *Underwood v. BNSF Ry. Co.*, 359 F. Supp. 3d 953, 957 (D. Mont. 2018) (internal citations omitted).

## DISCUSSION

Yellowstone Club seeks an order that 1) requires Cottonwood to remove its social media posts that have a substantial likelihood of materially prejudicing potential jurors in this case and 2) prohibits Cottonwoods and its counsel from making further extrajudicial statements to the public that have a substantial likelihood of materially prejudicing potential jurors in this case. (Doc. 56 at 5-6.)

### I. Cottonwood's social media posts.

Yellowstone Club requests that Cottonwood's social media posts be removed if they discredit Yellowstone Club and create a substantial likelihood of unfair

5

prejudice in the ongoing litigation. (Doc. 56 at 5.) Yellowstone Club also requests that Cottonwood remove all posts listed in Doc. 55-2, and an order preventing Cottonwood from making any statements about 1) the character, credibility, or reputation of the parties; 2) the identity of a witness or the expected testimony of a party or a witness; 3) the identity or nature of physical evidence expected to be presented or the absence of such physical evidence; and 4) the strengths or weaknesses of the case of either party.

Yellowstone Club relies on *Gentile* to argue that Cottonwood's statements should be limited to prevent prejudice to the jury pool and influence the outcome of the trial. (Doc. 56 at 13.) The U.S. Supreme Court in *Gentile* reviewed a ban on political speech that was critical of the government and its officials. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034 (1991). The defendant's lawyer held a press conference after his client had been indicted at which the lawyer made statements that were critical of the indictment and the state of Nevada's exercise of its police power. *Id*. Nevada had a rule that was nearly identical to ABA Model Rule 3.6 that limits extrajudicial statements that create a "substantial likelihood of material prejudice." *Id* at 1036 (quotations added).

The U.S. Supreme Court determined that statements that fall within the rules "require an assessment of proximity and degree of harm." *Id*. at 1037. The U.S. Supreme Court concluded that the defendant's lawyer did not know or could not

reasonably have known that his remarks created a substantial likelihood of material prejudice and that he had not violated the rule against extra judicial statements. *Id*. at 1058. The lawyer made statements contained in the publicly released indictment and broad statements about evidence weighing against the police department rather than his client. *Id*. at 1059-60.

Yellowstone Club argues that Cottonwood's statements fit within comment five on ABA Model Rule 3.6, which lists subjects that are more likely than not to have material prejudicial effect on a proceeding. (Doc. 56 at 15) (citing Model R. Pro. Conduct 3.6, cmt. 5 (ABA 2023).) Comment three states that "the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented" is more likely than not to have a material prejudicial effect on a proceeding. Model R. Pro. Conduct, cmt. 5.3 (ABA 2023). Cottonwood argues that any mention of expert data collection and results would be in the public record and falls within the exceptions in Mont. R. Pro. Conduct 3.6 (b) (1), (2), (3), and (6). (Doc. 60 at 6-7.)

Cottonwood relies on *In re Dan Farr Prods.* to argue that Yellowstone Club's request cannot survive strict scrutiny and Cottonwood should not be ordered to remove social media posts relating to the litigation. (Doc. 60 at 11-12.) A California district court in *In re Dan Farr Prods.* issued an order restricting "all references to

7

the pending litigation, except the disclaimer ordered by the Court, on [Petitioners'] websites and social media," and "from re-publishing any publicly available documents about the case, including documents publicly filed in the district court." *In re Dan Farr Prods.*, 874 F.3d 590, 593 (9th Cir. 2017). The Ninth Circuit reversed. The Ninth Circuit determined that the district court's orders constituted unconstitutional prior restraints on speech. *Id*. *In re Dan Farr Prods.* involved restricting the speech of a private party in a dispute over trademark usage, not restricting a lawyer's speech. The Ninth Circuit concluded that less restrictive alternatives existed to deal with the extrajudicial statements like jury selection and "the court's inherent management powers." *Id*.

This case proves different. "The Supreme Court has suggested that it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants." *Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590, 595 (9th Cir. 1985) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 360–63, 86 (1966) "Case restraints on trial participants is especially strong with respect to attorneys." *Id.* Many cases involve extrajudicial statements by attorneys arises in the criminal context. The Ninth Circuit has recognized, however, that "a threat to the integrity of the judicial process" created by a private litigant "is significant in cases involving trial publicity." *Id*. at 597 (9th Cir. 1985). Comment five on the Model Rule 3.6 also notes that the subjects listed may apply to civil

8

matters triable to a jury. Model R. Pro. Conduct, cmt. 5 (ABA 2023).

Yellowstone Club seeks an order requiring Cottonwood to remove all of the posts in Doc. 55-2. This request sweeps too broadly. A review of Cottonwood's social media posts and website confirm that Cottonwood's posts have reached a wide audience. For example, one video has over 17,000 likes on Instagram and over 28,000 likes on TikTok. (Doc. 55-2 at 11-12.) The video posted on TikTok has been shared over 1,500 times. (*Id.*) The Court presumes some of these videos have reached potential jury members.

Another video received over 4,500 likes on Instagram. (*Id* at 15-16.) This other video alleges that "[a] university researcher just determined that the Yellowstone Club is causing the algae blooms in the South Fork of the Gallatin River. The YC is dumping its treated sewage right into the river without a permit. It's causing these noxious nasty algae blooms. It's screwing up the aquatic ecosystem. We just asked a federal court to stop all new construction at the Yellowstone Club. We need to clean up the river and we need the Yellowstone Club to stop polluting." (*Id.*)

Dr. Patricia Glibert is the university researcher to whom the speaker refers in the video. (*Id.* at 25-26.) Dr. Glibert appears in another video posted by Cottonwood. (*Id.*) Dr. Glibert serves as Cottonwood's retained expert who has participated in site

visits to Yellowstone Club and analyzed water samples on and around Yellowstone Club property. (Doc. 63-5.) The Court presumes that Cottonwood seeks to rely on Glibert's expert opinion at trial and that the credibility of Glibert's opinion will be determined by a jury. To allow Cottonwood to interpret Glibert's results and conclude that "YC is dumping sewage right into the river without a permit" inevitably cuts against the jury's right to weigh evidence and make determinations of responsibility. Cottonwood's statements on these matters should be limited. (*See e.g.* Doc. 55-2 at 15-16; *id.* at 25-26; *id.* at 29-30.)

Cottonwood further implies that anything filed in the Court's docket will be considered public record and exempt from Mont. R. Pro. Conduct 3.6. (Doc. 60 at 5.) The Court disagrees. If anything filed in the Court record would be considered public record, then a party could simply shield itself from the rule against extrajudicial statements by filing the material with the court. The Court recognizes that Cottonwood may speak about some material in the public record. *See Underwood v. BNSF Ry. Co.*, 359 F. Supp. 3d 953 (D. Mont. 2018) (lawyer's statements about the procedural status of the case did not violate Mont. R. Pro Conduct 3.6). The rules likely protect a lawyer's statements that directly track allegations in the complaint or simply state that investigations remain in progress without giving an interpretation of the results. *See e.g. PCG Trading, LLC v. Seyfarth Shaw*, LLP, 951 N.E.2d 315 (Mass. 2011); *EEOC v. McCormick & Schmick's*

*Seafood Rests., Inc.*, No. WMN-08-CV-984, 2011 WL 1526967, 2011 BL 332301 (D. Md. Mar. 17, 2011).

Cottonwood attempts to admit documents in the public record by attaching numerous exhibits to its filings. (*See e.g*. Doc. 63). The expert reports and opinions represent the kind of evidence on which the parties would rely at trial and prove proper for a jury to make credibility determinations. It is the Court's role to ensure a fair trial. If the parties disclose statements and results by competing experts before trial and make interpretations in the court of public opinion and among potential jury members, the Court faces an increasingly difficult task of selecting an impartial jury. Cottonwood's statements should be limited before the trial.

Cottonwood also argues that its statements fall under the exception for "a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest." (Doc. 60 at 7-11) (citing Model. R. Pro. Cond. 3.6 (b)(6).) Cottonwood uses its expert's opinion that "Yellowstone Club's irrigation practices pose a human health risk" to argue that there exists a risk to public health. (*Id*. at 10.) Cottonwood cites to no other reports or instances indicating that Yellowstone Club's irrigation practices pose a human health risk or harm to the public interest. This exception does not apply without more evidence indicating a human health risk

exists.

## CONCLUSION

The Court grants, in part, Yellowstone Club's Motion to Restrict Extrajudicial Statements (Doc. 55.) Each party shall bear its own fees and costs associated with this order, the hearings related to it, and the briefing. Cottonwood shall not make extrajudicial statements that interpret expert results that Cottonwood reasonably expects to use at trial. The restrictions and narrowness of the order are explained in more detail below.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Yellowstone Club's Motion to Restrict Extrajudicial Statements (Doc. 55) is **GRANTED in part,** as follows:

2. This order applies equally to Yellowstone Club and its counsel. Any reference to Cottonwood shall equally apply to Yellowstone Club.

3. Any references to Cottonwood also include Cottonwood's employees, or any persons retained or previously retained by Cottonwood.

4. Cottonwood shall not make extrajudicial statements that interpret the expected expert results or witness testimony that Cottonwood reasonably expects to use at trial.

5. Cottonwood shall not make extrajudicial statements about the strengths or

12

weaknesses of the case of either party.

6. Cottonwood shall remove all social media posts on all platforms that make conclusions or interpretations about expert results or witness testimony that it reasonably expects to use at trial.

7. This order does not require Cottonwood to remove Cottonwood's website.

8. This order does not preclude Cottonwood from making statements about the procedural status of the case.

9. This order does not preclude Cottonwood from making statements alleged in the Complaint.

DATED this 9th day of January, 2025.

_____
Brian Morris, Chief District Judge
United States District Court