# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER,<br><br>                Plaintiff,<br><br>   v.<br><br>YELLOWSTONE MOUNTAIN CLUB LLC,<br><br>                Defendant. | No. 2:23-CV-00026-BMM<br><br><br>**ORDER** |

The Court addresses three outstanding motions. Defendant Yellowstone Mountain Club LLC ("Yellowstone Club") filed a motion to enforce the Court's January 9, 2025, Order regarding social media posts. (Doc. 77.) Plaintiff Cottonwood Environmental Law Center ("Cottonwood") opposes the motion, arguing that it is compliant with the Court's order. (Doc. 82.) Cottonwood separately filed a motion to amend its Complaint. (Doc. 88.) Yellowstone Club opposes the motion. (Doc. 92.) Cottonwood also filed a motion for a preliminary injunction. (Doc. 79.) Yellowstone Club opposes the motion. (Doc. 83.) The Court will address each motion in turn.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Court will not repeat the factual and procedural background at length. This case relates to a Clean Water Act ("CWA") lawsuit filed by Cottonwood against the Yellowstone Club that began in 2022. *See Cottonwood Env't L. Ctr. v. Yellowstone Mountain Club, LLC,* 2023 WL 7018748 (D. Mont. Oct. 25, 2023).

## DISCUSSION

### I.    Motion to Enforce

Yellowstone Club argues that Cottonwood remains in clear violation of the Court's order by refusing to remove posts that interpret expert analyses, specifically those of Dr. Patricia Glibert, Shannon Roback, and Fred Offenkrantz. (Doc. 78 at 7–8.) These posts include interpretations of isotopic analysis linking algae blooms to Yellowstone's pollution, among others, which the court explicitly prohibited. (*Id.* at 8.)

Cottonwood argues it is in compliance with the Court's January 9, 2025, order. (Doc. 82.) Cottonwood has filed a RICO lawsuit against Yellowstone Club and its counsel, Jon Rauchway, alleging a scheme to facilitate luxury development in Big Sky, Montana, and to recover legal costs incurred due to this alleged unlawful activity. (*Id.*) Cottonwood contends that all social media posts cited by the Yellowstone Club comport with allegations in the RICO complaint, and the Court previously has ruled that the Montana Rules of Professional Conduct protect

2

publication of these statements. (*Id.* at 3.) Cottonwood asserts that the Yellowstone Club has not identified any social media posts that deviate from the RICO complaint allegations, and, therefore, the motion to enforce should be denied. (*Id.*)

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "Civil contempt . . . consists of a party's disobedience to a specific and definite court by failure to take all reasonable steps within the party's power to comply." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Id.* (citation omitted); *see also Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 856 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.").

The party moving for civil contempt has the burden of "showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* (citation omitted). "They must show they took every reasonable step to comply." *Stone*, 968 F.2d at 856 n.9.

3

The Court's January 9, 2025 order directed the Cottonwood to do the

following:

> 2. This order applies equally to Yellowstone Club and its counsel. Any reference to Cottonwood shall equally apply to Yellowstone Club.
>
> 3. Any references to Cottonwood also include Cottonwood's employees, or any persons retained or previously retained by Cottonwood.
>
> 4. Cottonwood shall not make extrajudicial statements that interpret the expected expert results or witness testimony that Cottonwood reasonably expects to use at trial.
>
> 5. Cottonwood shall not make extrajudicial statements about the strengths or weaknesses of the case of either party.
>
> 6. Cottonwood shall remove all social media posts on all platforms that make conclusions or interpretations about expert results or witness testimony that it reasonably expects to use at trial.
>
> 7. This order does not require Cottonwood to remove Cottonwood's website.
>
> 8. This order does not preclude Cottonwood from making statements about the procedural status of the case.
>
> 9. This order does not preclude Cottonwood from making statements alleged in the Complaint.

(Doc. 69 at 12–13.) Cottonwood has not complied with the Court's previous order.

Yellowstone Club presented 20 posts made by Cottonwood that it argues do not

comply with the Court's order. (*See* Doc. 78-4.) The Court has reviewed the 20

posts. The Court directs Cottonwood to remove the following post that relate to the interpretation of expert reports:

1. May 13, 2023, Instagram Video. (Doc. 78-4 at 2.)

2. May 17, 2023, Vimeo Video Titled: Fun with the Yellowstone Club. (Doc. 78-4 at 3–4.)

3. January 7, 2024, Vimeo Video Titled: YC (1724). (Doc. 78-4 at 5.)

4. January 11, 2024, Facebook Video. (Doc. 78-4 at 6–7.)

5. January 16, 2024, Instagram Video. (Doc. 78-4 at 8–9.)

6. October 3, 2024, Instagram Video. (Doc. 78-4 at 14–15.)

7. October 24, 2024, Vimeo Video Titled: Class 2 – Plastics & the Precautionary Principle (fall 2024). (Doc. 78-4 at 18–19.)

8.  November 22, 2024, Instagram Post. (Doc. 78-4 at 20–21.)

The Court further directs Cottonwood to edit the captions in the following posts to remove any reference to the interpretation of expert reports:

1. February 1, 2024, Instagram Video. (Doc. 78-4 at 10–11.)

2. November 23, 2024, Vimeo Video Titled: Second Yellow Mule Creek – Yellowstone Club. (Doc. 78-4 at 22.)

3. November 23, 2024, Vimeo Video Titled: Yellowstone Club Golf Course Hole 4 Water Hazard. (Doc. 78-4 at 23.)

4. November 24, 2024, Vimeo Video Titled: Second Yellow Mule Creek. (Doc. 78-4 at 24.)

5. November 24, 2024, Vimeo Video Titled: Yellowstone Club – Crushmore area. (Doc. 78-4 at 25.)

6. November 24, 2024, Vimeo Video Titled: Yellowstone Club Site Investigation. (Doc. 78-4 at 26.)

The Court finally directs Cottonwood to remove from Cottonwood's website anything related to expert reports and declarations related to this case, including language interpreting expert reports. The expert reports and declarations include the following:

1. Gilbert Report

2. Roback Report

3. Osorno Report

4. Dutton Report

5. Expert Report (isotope)

6. Expert Declaration (isotope)

7. Expert Declaration (fecal coliform)

*See* https://www.cottonwoodlaw.org/our-work/prosecuting-clean-water-act-violations-in-big-sky-montana-8htlk (last accessed July 7, 2025).

The Court grants Cottonwood one week from the date of this Order to come into compliance with this Order. The Court will sanction Cottonwood $500 per day if Cottonwood does not remove or edit the above posts to comply with this Order. The Court will further impose sanctions if Cottonwood makes additional posts

related to the interpretation of expert reports in this case by excluding

Cottonwood's experts from testifying at trial.

## II.    Motion to Amend

Cottonwood seeks to file a second amended complaint to address

deficiencies identified by the Court in its motion to dismiss, specifically regarding

the public nuisance claim. (Doc. 89 at 12–13; *see also* Doc. 26.) Cottonwood

argues that its Rule 34 investigations revealed that the Yellowstone Club's Hole 4

water hazard contains treated effluent, and that Hole 4 water hazard is

hydrologically connected to the South Fork/West Fork of the Gallatin River.

Cottonwood pleads this allegation as a violation of public nuisance law in the

proposed Second Amended Complaint. (Doc. 93 at 2.)

Cottonwood asserts that the discovery of new facts constitutes good cause to

modify the scheduling order, as the pretrial deadlines could not reasonably be met

despite their diligence. (*Id.* at 3.) The deadline for amending pleadings passed on

July 26, 2024. Cottonwood contends that it discovered these new facts in May

2025, after the second Rule 34 investigation. (*Id.*) Cottonwood argues that it has

organizational standing because its members have suffered special injuries distinct

from the general public, including recreational, spiritual, and economic injuries.

(*Id.* at 5.)

Fed. R. Civ. P. Rule 16(b)(4) mandates that the Court's scheduling order may be modified only "for good cause and with the judge's consent." A party's failure to address good cause provides sufficient grounds for denial. *See Billiot v. Bankers Specialty Ins. Co.*, 2023 WL 2263826 at *4 (E.D. La. Feb. 28, 2023); *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248–49 (10th Cir. 2015). "Arguments not raised in [an] opening brief are waived." *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n. 4 (9th Cir. 1999). Cottonwood does not address Rule 16(b)'s good cause requirement in its motion. (*See* Doc. 88; Doc. 89.) Cottonwood's procedural shortcomings prove sufficient to deny Cottonwood's motion.

Cottonwood also fails to establish good cause. Cottonwood presents no reasonable argument as to how the new evidence from its Rule 34 investigation establishes good cause to modify the scheduling order and vacate the amended pleadings deadline. Specifically, Cottonwood argues that its discovery of a direct connection between the Hole 4 water hazard and the South Fork/West Fork of the Gallatin River constitutes good cause.

The Court does not find this evidence persuasive to establish good cause. Cottonwood's First Amended Complaint alleged that the Yellowstone Club was polluting the South Fork/West Fork of the Gallatin River via irrigation and water hazards on the golf course. (*See* Doc. 13.) Cottonwood's newly discovered

8

evidence does not alter Cottonwood's original pollution theory. And under that theory—the same theory now before the Court—the Court previously dismissed Cottonwood's public nuisance claim.

Cottonwood also fails to demonstrate the injuries suffered by its members to support a public nuisance claim. The Court discussed at length the standing requirement for establishing a public nuisance claim in its previous motion to dismiss order in this case. (*See* Doc. 26 at 5–13.) The Court dismissed Cottonwood's public nuisance claim after having analyzed two affidavits submitted by Cottonwood. (*Id.*) The basis for the Court's dismissal of the public nuisance claim dealt with procedural deficiencies in Cottonwood's filing of its affidavits. (*Id.*) The Court nevertheless analyzed the merits of each affidavit. (*Id.*)

The first affidavit was from Patagonia, Inc. founder, Yvon Chouinard, on behalf of Patagonia asserting that the alleged wastewater causing algae pollution "harms 'Patagonia's economic bottom line'" (*Id.* at 8 (citing Doc. 24, ¶ 4).) The Court found that "Chouinard's alleged injury . . . fail[ed] to support Cottonwood's claim for organizational standing . . . because Cottonwood and Chouinard would be required to participate in the case and because Cottonwood failed to allege particular harm to Chouinard's economic interests in its complaint, Amended Complaint, or any documents accompanying its claims." (*Id.* at 10.)

The second affidavit was from a Cottonwood member, Quinn O'Connor, who possessed an interest in fishing the Gallatin River. (*Id.* at 10 (citing Doc. 25, ¶ 3).) The Court determined that Cottonwood failed "to allege a particular and special injury that it suffers from the Yellowstone Club's alleged dumping of treated wastewater that other persons in the community do not suffer." (*Id.* at 12.) The Court further noted that "Cottonwood's alleged harm proves largely the same as that suffered by the public." (*Id.*)

Cottonwood seeks to reintroduce its public nuisance claim on an identical theory. Cottonwood provides two declarations from its members – William Goldsmidt and Sprague Hollander. (Doc. 92 at 4–5.) Cottonwood claims Goldsmidt, like Chouinard, has suffered an economic injury due to the Gallatin River's pollution. (*Id.* at 4.) Goldsmith asserts that his economic injury stems from his business's reliance on ecotourism related to recreation on the Gallatin River. (Doc. 89-1 at 34.)

Cottonwood's conservation and environmental interests do not encompass Goldsmidt's economic interests. Like Chouinard's economic interest, Goldsmidt's economic interest would require substantial participation on Goldsmidt's part "to determine whether Yellowstone Club's alleged conduct caused harm to [Goldsmidt's] economic interest." (Doc. 26 at 10.) Such a requirement likely fails to meet the criterion established in *Hunt v. Washington State Apple Advert.*

10

*Comm'n* to establish organizational standing. 432 U.S. 333, 343 (1977); *see also* (Doc. 26 at 10.) Cottonwood fails to allege particular harm to Goldsmidt's economic interest in its proposed Second Amended Complaint. (*See* Doc. 89-1.)

Cottonwood claims Hollander, like O'Connor, has suffered a spiritual injury from the Gallatin River's pollution. (Doc. 92 at 4.) Hollander has fished the river for forty years and no longer fishes the river. (Doc. 89-1 at 31.) Hollander's enjoyment of the river "is a common privilege enjoyed by the general public." *See*, *Clean Water & Air Legacy, LLC v. Tofte Wastewater Treatment Ass'n*, 649 F. Supp. 3d 764, 773–74 (D. Minn. 2023).

### III.    Motion for Preliminary Injunction

The Court previously has addressed many of the arguments Cottonwood makes in Cottonwood's previous motion for preliminary injunction. (*See* Doc. 38.) Cottonwood presents little new evidence in support of this motion for preliminary injunction. (*Compare* Doc. 30 to Doc. 80.) Cottonwood's motion fails for the same reasons.

A plaintiff seeking a preliminary injunction must establish the following four factors: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The Ninth Circuit also

11

employs a "sliding scale" approach under which a preliminary injunction may be granted "when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). The sliding scale approach requires additionally that a plaintiff satisfy all the other *Winter* factors. *Id.* A preliminary injunction proves to be an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

### A. Whether Cottonwood has demonstrated likely success on the merits or serious questions going to the merits.

Under *Winter*, likely success on the merits represents the "most important" factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). To prevail on a direct discharge claim, a plaintiff must show that "the defendant (1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1083 (9th Cir. 2019). Point source means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, [or] well . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Pollutant includes "dredged spoil, solid waste, . . . sewage, garbage, sewage sludge,

munitions, chemical wastes, biological materials, . . . and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

A party can prevail on an indirect discharge claim under the CWA by demonstrating that the discharge of pollutants from a point source into groundwater, which subsequently reaches navigable waters, constitutes the "functional equivalent of a direct discharge." *Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund,* 590 U.S. 165, 183 (2020).

Cottonwood makes four arguments regarding discharge: (1) irrigation with *fecal coliform* and *E. coli*; (2) the golf course water hazards; (3) irrigation of the Crushmore area; and (4) golf course irrigation. The Court will consider the alleged discharge sources independently with respect to Cottonwood's likelihood of success on the merits. Arguments one and four overlap and will be addressed together.

### 1. Golf Course Irrigation

Cottonwood presents a nearly identical argument in this motion for preliminary injunction as it did in its previous motion for preliminary injunction. (*See* Doc. 38 at 10–12.) Cottonwood argues that Yellowstone Club is violating the CWA by discharging *fecal coliform* and *E. coli* into waters of the United States without a permit by irrigating its golf course with effluent. (Doc. 80 at 13.) Cottonwood asserts that its experts have conducted laboratory analysis of the water

13

used to irrigate the golf course. (*Id.* at 14.) Cottonwood contends the water used to irrigate the golf course contains *fecal coliform* at a concentration of "6500 CFU– more than two hundred eighty times that of state and federal human safety standards." (*Id.*)

Cottonwood fails to meet the standard of likely success on the merits. Cottonwood provides water samples taken from the Middle Spring and East Spring as evidence of the CWA violation. (*Id.*) Yellowstone Club points to evidence that Cottonwood failed to test the source of Yellowstone Club's irrigation waters— Yellowstone Club's wastewater treatment plant and the Water Resource Recovery Facility. (Doc. 83 at 18.) The Montana Department of Environmental Quality ("DEQ") tested those water sources. (Third Chandler Decl., ¶ 14.) Test results show those sources compliant with DEQ regulations, and no elevated levels of *E. Coli* were measured. (*Id.*, ¶¶ 15–17.)

Cottonwood also has failed to establish a demonstrable nexus between the Yellowstone Club's irrigation and waters of the United States. Cottonwood conducted dye tracer tests on Yellowstone Club's property between August 20, 2024, and September 8, 2024. (*Id.*, ¶ 12.) Cottonwood took additional samples on October 23, 2024. (*Id.*) Cottonwood tested over 100 samples. (*Id.*) Cottonwood tests found no detectable dye. (*Id.*) Cottonwood has failed to demonstrate likely success on the merits as required by *Winter* with respect to Yellowstone Club's

golf course irrigation. 555 U.S. at 22. Cottonwood similarly has failed to raise

substantial questions going to the merits of its CWA claim. *All. for the Wild*

*Rockies*, 632 F.3d at 1134.

### 2.  Golf Course Water Hazard

Cottonwood argues that the Hole 4, Hole 6, and Hole 12 water hazards on

Yellowstone Club's golf course discharge treated sewage directly into the South

Fork/West Fork of the Gallatin River. (Doc. 80 at 14–15.) Cottonwood supports

this assertion with microalgae samples collected from the Hole 4 water hazard and

the South Fork/West Fork of the Gallatin River. (*Id.*) Cottonwood contends that its

expert analyzed these microalgae samples using isotopic analysis, and that the

results indicate treated sewage. The Court already has addressed Holes 6 and 12 in

Cottonwood's previous motion for a preliminary injunction. (Doc. 38 at 6–10.)

Cottonwood puts forth no new evidence to support its assertion to connect water

from the Hole 6 pond and the Hole 12 pond to the South Fork/West Fork of the

Gallatin River.

It is undisputed that a direct discharge exists from the Hole 4 Pond into the

South Fork/West Fork of the Gallatin River. Yellowstone Club asserts that the

Hole 4 hazard contains freshwater and that the overflow pipe serves as a

stormwater control feature that allows overflow from snowmelt and significant rain

events to drain from the pond. (Second Chandler. Decl., ¶¶ 19–20.) Yellowstone

Club's expert challenges the reliability of Cottonwood's expert analysis and argues that the isotopic analysis of the microalgae "cannot reliably identify any particular source of nitrogen." (Doc. 83 at 21.) When a case involves "complicated technical aspects the court should have the benefit of expert opinion clarified by cross-examination." *Heyman v. Ar. Winarick, Inc.*, 166 F. Supp. 880, 883 (S.D.N.Y. 1958) (citing *Hall Signal Co. v. Gen. Ry. Signal Co.*, 153 F. 907 (2d Cir. 1907)). Resolution of "technical dispute[s] upon conflicting affidavits submitted in support of a motion for a preliminary injunction" proves improper. *Id.* The Court anticipates that cross-examination at trial of the parties' experts will help the Court resolved these disputed matters. *Id.*

### 3.  Crushmore Area Irrigation

Cottonwood argues that Yellowstone Club overirrigates the Crushmore area. (Doc. 80 at 18.) Cottonwood bases this argument on Yellowstone Club using DEQ's equation for "Douglas Fir Forest" to determine the volume of irrigation for the Crushmore area. (*Id.*) Cottonwood contends that Yellowstone Club incorrectly uses this equation despite the Crushmore area actually comprising "regenerating clear cut." (*Id.*)  Cottonwood bases the gravamen of its argument regarding the Crushmore area irrigation on the same isotopic analysis of microalgae as used for its Hole 4 pond claim. (*Id.* at 21.)

16

Cottonwood's arguments fail to show likely success on the merits for the same reasons its golf course irrigation argument fails. Cottonwood has not presented indisputable expert evidence that has not been rebutted by Yellowstone Club's experts showing that the treated effluent reaches Second Yellow Mule Creek. It would be inappropriate for the Court to issue a preliminary injunction in light of the conflicting affidavits submitted by the parties' experts. *Cf. Heyman*, 166 F. Supp. at 883. Cottonwood also has presented no evidence showing a positive dye test. Cottonwood's argument regarding the volume of irrigation also fails because DEQ has reviewed Yellowstone Club's irrigation plan of Crushmore and has confirmed its authorization by DEQ. (Third Chandler Decl., ¶¶ 8–9.)

### B. Whether Cottonwood has demonstrated that irreparable harm likely would occur in the absence of preliminary relief.

A plaintiff seeking a preliminary injunction must demonstrate that irreparable injury proves likely in the absence of an injunction. *Winter*, 555 U.S. at 22. A party seeking a preliminary injunction must show a sufficient causal connection between the alleged injury and the conduct sought to be enjoined. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011). A preliminary injunction may not be granted based only on a possibility of irreparable harm. *Winter*, 555 U.S. at 22. The party moving for a preliminary injunction bears the burden of demonstrating "immediate threatened harm." *Caribbean Marine*

*Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). To establish a risk of irreparable harm in the indefinite future proves insufficient. *See Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850–51 (9th Cir. 2001). The harm alleged must be shown to be imminent. *Id.*

The Court need not address this factor as Cottonwood has failed to show a likelihood of success on the merits. *See e.g.*, *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Cottonwood fails to meet its burden concerning this factor. Cottonwood's lack of showing of a demonstrable connection between irrigation effluent and waters of the United States, combined with conflicting expert reports regarding effluent analysis, cut against Cottonwood's argument that Yellow Mule Creek and the South Fork/West Fork will suffer immediate irreparable harm. *Caribbean Marine Services Co.*, 844 F.2d at 674.

### C. Whether the balance of equities tip in Cottonwood's favor.

The party moving for injunctive relief bears the burden of establishing that "the balance of equities tips in [their] favor." *Winter*, 555 U.S. at 22. A court must "balance the interest and weigh the damage to each [party]" in assessing whether this burden has been met. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). "Courts must also pay particular attention to the public consequences of employing the extraordinary remedy of injunction." *Native Ecosystems Council v. Mehlhoff*, 2020 WL 3969343, at *7 (D. Mont. July 6, 2020), report and

18

recommendation adopted, 2020 WL 4260515 (D. Mont. July 24, 2020) (internal
citation and quotation omitted.)

The Court finds the balance of equities does not tip in Cottonwood's favor.
The same reasons for denying Cottonwood's first motion for preliminary
injunction on this factor apply here. (*See* Doc. 38 at 14–15.) The Court will not
repeat its reasoning.

### D. Whether a preliminary injunction would be in the public interest.

The public interest inquiry generally considers the impact upon nonparties of
granting or withholding injunctive relief. *League of Wilderness Defenders/Blue
Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir.
2014). Courts are instructed to "pay particular regard for the public consequences
in employ[ing] the extraordinary remedy of injunction." *Stormans, Inc.*, 586 F.3d
at 1139 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312–13 (1982)).
The Court similarly relies on its reasoning in denying Cottonwood's previous
motion on this factor applicable here. (*See* Doc. 38 at 15–16.) The Court will not
repeat its reasoning.

### CONCLUSION

The Court will require Cottonwood to remove the social media posts that
directly discuss or interpret expert witness evidence and edit the captions of other
posts that mention expert witness evidence to comply with the Court's previous

19

order. The Court will deny Cottonwood's motion to file a second amended complaint as Cottonwood has failed to show good cause under Fed. R. Civ. P. 16(b). The Court will deny Cottonwood's motion for preliminary injunction as Cottonwood has not demonstrated likely success on the merits.

## ORDER

Accordingly, **it is ORDERED** that:

1. Yellowstone Club's motion to enforce (Doc. 77) is **GRANTED in part**.

   a. Cottonwood is given one week from the date of this Order to comply with the Order. If Cottonwood fails to comply with this Order, Cottonwood will face a $500 fine per day for each day Cottonwood remains uncompliant.

   b. Cottonwood is ordered to remove the following post that relate to the interpretation of expert reports:

      i. May 13, 2023, Instagram Video. (Doc. 78-4 at 2.)

      ii. May 17, 2023, Vimeo Video Titled: Fun with the Yellowstone Club. (Doc. 78-4 at 3–4.)

      iii. January 7, 2024, Vimeo Video Titled: YC (1724). (Doc. 78-4 at 5.)

      iv. January 11, 2024, Facebook Video. (Doc. 78-4 at 6–7.)

  v. January 16, 2024, Instagram Video. (Doc. 78-4 at 8–9.)

  vi. October 3, 2024, Instagram Video. (Doc. 78-4 at 14–15.)

  vii. October 24, 2024, Vimeo Video Titled: Class 2 – Plastics & the Precautionary Principle (fall 2024). (Doc. 78-4 at 18–19.)

  viii. November 22, 2024, Instagram Post. (Doc. 78-4 at 20–21.)

c. Cottonwood is ordered to edit the captions in the following posts to remove any reference to the interpretation of expert reports:

  i. February 1, 2024, Instagram Video. (Doc. 78-4 at 10–11.)

  ii. November 23, 2024, Vimeo Video Titled: Second Yellow Mule Creek – Yellowstone Club. (Doc. 78-4 at 22.)

  iii. November 23, 2024, Vimeo Video Titled: Yellowstone Club Golf Course Hole 4 Water Hazard. (Doc. 78-4 at 23.)

  iv. November 24, 2024, Vimeo Video Titled: Second Yellow Mule Creek. (Doc. 78-4 at 24.)

  v. November 24, 2024, Vimeo Video Titled: Yellowstone Club – Crushmore area. (Doc. 78-4 at 25.)

  vi. November 24, 2024, Vimeo Video Titled: Yellowstone Club Site Investigation. (Doc. 78-4 at 26.)

d. Cottonwood is ordered to remove from Cottonwood's website anything related to expert reports and declarations related to this

21

case, including language interpreting expert reports. The expert

reports and declarations include the following:

    i. Gilbert Report

    ii. Roback Report

    iii. Osorno Report

    iv. Dutton Report

    v. Expert Report (isotope)

    vi. Expert Declaration (isotope)

    vii. Expert Declaration (fecal coliform)

*See* https://www.cottonwoodlaw.org/our-work/prosecuting-clean-water-act-violations-in-big-sky-montana-8htlk (last accessed July 7, 2025).

2. Cottonwood's motion to amend (Doc. 88) is **DENIED**.

3. Cottonwood's motion for preliminary injunction (Doc. 79) is **DENIED.**

DATED this 17th day of July, 2025.

_____

Brian Morris, Chief District Judge
United States District Court

22