# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | CV-23-26-BU-BMM |
| Plaintiff, | |
| v. | ORDER |
| YELLOWSTONE MOUNTAIN CLUB, LLC, | |
| Defendants. | |

Defendant Yellowstone Mountain Club, LLC ("Yellowstone") filed a motion to exclude Cottonwood Environmental Law Center's ("Cottonwood") untimely expert reports and opinions. (Docs. 115.) Yellowstone also filed a motion for miscellaneous relief to enforce the Court's Order (Doc. 69.) regarding Cottonwood's social media posts. (Doc. 107.) The Court held a hearing on the motions on September 25, 2025. The Court denies the motion to exclude. The Court grants the motion to enforce.

## BACKGROUND

Cottonwood filed suit against Yellowstone alleging pollution of the Gallatin River in violation of the Clean Water Act on April 25, 2023. (Doc. 1.) The Court

1

initially entered a scheduling order in this case on June 26, 2024. (Doc. 44.) The Court issued an amended scheduling order on July 17, 2025, that extended the deadline to complete depositions to September 30, 2025, and filing discovery motions to October 13, 2025. (Doc. 100.) The amended scheduling order directed the parties to disclose liability and damage experts with Rule 26(a)(2) reports on or before January 15, 2025. (Doc. 44 at 2.) The amended scheduling order also required all parties to disclose rebuttal experts and reports by February 18, 2025. (*Id*.) Discovery closed on July 30, 2025. (*Id*.) The amended scheduling order advised that "[i]nitial reports or depositions of experts determined to be inaccurate, or incomplete shall be corrected or completed by supplemental disclosure no later than 90 days before trial." (*Id*. ¶ 9.)

The parties disclosed the expert reports on December 16, 2024. The parties disclosed rebuttal expert reports on March 4, 2025. (Doc. 115 at 4.) Cottonwood requested an additional site investigation to dye the Yellowstone Club's freshwater ponds, including the Hole 6, Hole 12, and Hole 4 ponds. (*Id*.) The Court allowed the site investigation to be completed. (*Id*.) Cottonwood also requested to complete another dye tracer test on the Hole 4 pond, which the Court granted. (*Id*.) Cottonwood conducted site visits at the Yellowstone Club on April 15, 2025, and April 22, 2025, to perform dye tests on the Hole 4 pond. (*Id*.) Cottonwood provided Yellowstone with the sampling results from the April visits on April 28, 2025, and

May 5, 2025. (*Id*. at 5.) The parties conducted analysis on the data and shared the results in June 2025. Cottonwood provided Yellowstone additional results on the nitrogen and oxygen isotope results from the April 2025 site visit on July 24, 2025. (*Id*.) Cottonwood did not disclose to Yellowstone that it would be providing supplemental expert reports. (*Id*.) Cottonwood disclosed it would be providing additional expert reports much later on September 16, 2025. (*Id*.) Cottonwood indicated the new expert reports would relate to the April 2025 site visit including the following: (1) the Hole 4 pond dye test; (2) the isotopic analysis data; and (3) the 2024 irrigation season data analysis. (*Id*. at 6.)

Cottonwood provided Yellowstone with three additional expert reports on September 24, 2025. (*Id*.) These included reports from Dr. Patricia Glibert, Trevor Osorno, and Barry Dutton. (*Id*.) The parties have completed the scheduled depositions of Dr. Glibert, Osorno, and Dutton. (*Id*.) Cottonwood contends that these depositions included questions relating to the supplemental reports provided on September 24, 2025. (Doc. 114.) Dr. Glibert's report opines on the Hole 4 Pond dye test data collected from the April 2025 site visit. (Doc. 114-2.) Osorno's report opines on the hydrological connection between the Hole 4 Pond and the South Fork/West Fork of the Gallatin River with his basis coming from the sampling collected from the April 2025 site visit. (Doc. 114-3.) Dutton's report opines on the 2024 irrigation season data. (Doc. 114-1.)

3

## LEGAL STANDARD

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any witness that the party plans to use at trial to present expert testimony. The expert disclosure "must be accompanied by a written report" that contains "a complete statement of all opinions the witness will express." Fed. R. Civ. P. 26(a)(2)(B). Parties must make disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Parties must supplement or correct their disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Parties must disclose "any additions or changes to this information" before "pretrial disclosures under Rule 26(a)(3) are due." *Id*. Pursuant to Rule 26(a)(3), parties must disclose "at least 30 days before trial" unless otherwise ordered by the court.

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) also authorizes the Court to impose other appropriate

sanctions such as the payment of reasonable expenses "[i]n addition to or instead of" excluding the evidence. Fed. R. Civ. P. 37(c)(1); *see also Plentyhawk v. Sheikh*, CV 14-44-BLG-SPW, 2016 U.S. Dist. LEXIS 70815, at *11 (D. Mont. May 31, 2016).

## DISCUSSION

Yellowstone asks the Court to exclude the new expert reports and opinions disclosed by Cottonwood after the close of discovery on July 30, 2025. (Doc. 115.) Specifically, Yellowstone seeks to exclude the additional reports created by Dr. Glibert and Trevor Osorno regarding the April 2025 site visit at Yellowstone's golf course. (*Id*.) Yellowstone has requested that the Court exclude Cottonwood's expert reports as a sanction for Cottonwood's untimely disclosure. Yellowstone does not seek the court to exclude the report of Barry Dutton referencing the 2024 irrigation season data. The parties agree Dutton's testimony will include analysis of the data from the 2024 irrigation season.

"The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of the Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)). The Court employs "a five-factor test to determine whether a sanction proves appropriate: 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its

5

docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

## I.    Exclusion of the reports by Dr. Glibert and Trevor Osorno

Yellowstone argues that Cottonwood's reports by Dr. Glibert and Osorno prove untimely as Cottonwood failed to disclose reports until after discovery had closed on July 30, 2025. (Doc. 115.) Cottonwood responds that the new reports should not be excluded because the reports supplement the experts' previous reports and deposition testimony with information derived from the April 2025 site visit. (Doc. 114 at 2.) Cottonwood contends the reports are timely, the reports were disclosed 90 days before the trial date, and in compliance with the Court's amended scheduling order. (*Id*.) The Court addresses each issue in turn.

Cottonwood failed to timely produce Dr. Glibert's and Osorno's reports pursuant to the Court's scheduling order. Rule 26(e)(1) requires supplemental opinions in three instances: "(1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). Cottonwood does not allege that its initial disclosures or its answers to discovery requests were inaccurate or incomplete.

6

Cottonwood instead admits that Dr. Glibert's new report offers new data on the process of nitrification from the April 2025 site visit. Dr. Glibert indicates the new report and opinions would be used to "refute the notion proposed by Yellowstone experts" (Doc. 114-2 at 4.) Osorno's report similarly does not correct any inaccuracies of his previous report. Osorno's report offers new opinions on the hydrological connection between the Hole 4 Pond and the South Fork of the Gallatin River. (Doc. 114-3 at 4-5.) Both reports offer new opinions based on the findings of the April 2025 site visit. Dr. Glibert's and Osorno's new reports cannot be considered supplemental.

For Cottonwood's disclosure to have been timely, it would have had to produce Dr. Glibert's and Osorno's reports within the deadlines outlined in the amended scheduling order. The Court's amended scheduling order clearly instructed that the parties needed to submit expert, and rebuttal reports no later than February 18, 2025 (Doc. 44.) The deadline has passed. Cottonwood failed to disclose Dr. Glibert's and Osorno's reports until September 24, 2025. "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Erickson v. Ford Motor Co.*, No. 2:04-cv-00088-RFC, 2007 WL 5527512 at *4 (D. Mont. Nov. 14, 2007). The Court determines Dr. Glibert's and Osorno's reports to be untimely.

Cottonwood has failed to show a substantial justification for its delay in disclosing Dr. Glibert's and Osorno's reports. Cottonwood argues the data from the April 2025 site visit was available to Yellowstone by July of 2025 when it shared the information with Yellowstone. Cottonwood disclosed the data from the April 2025 site visit to Yellowstone but failed to provide supplemental expert reports to Yellowstone at that time. Cottonwood delayed providing Yellowstone with Dr. Glibert's and Osorno's reports until late September 2025 after the Court's intervention. Cottonwood had the ability to provide Yellowstone with the new reports before the close of discovery and before the depositions on experts were completed. Cottonwood's "[l]ack of diligence" in obtaining the data and creating its expert reports does not substantially justify its delayed and untimely disclosures. *See Theoharis v. Rongen*, No. C13-1345RAJ, 2014 U.S. Dist. LEXIS 98086, at *24 (W.D. Wash. July 18, 2014).

Cottonwood has indicated that reopening Dr. Glibert's and Osorno's depositions is unnecessary. Cottonwood contends that Yellowstone questioned Dr. Glibert and Osorno at their depositions on the information contained in the new reports, including questioning on the data discovered from the April 2025 site visit. To the extent that Yellowstone lacks any relevant information on the April 2025 site visit, Yellowstone must be allowed to reopen the depositions of Dr. Glibert and

8

Osorno to question them regarding the previously undisclosed opinions from the April 2025 site visit.

The costs and burden to Yellowstone are harmful and should be borne by Cottonwood. Trial is set for February 3, 2026. The Court and the parties must act with alacrity in rectifying the delayed disclosures. Yellowstone must be provided adequate time to prepare rebuttal expert report against Dr. Glibert's and Osorno's new opinions.

The Court finds that the *Wendt* factors present a mixed view of excluding Dr. Glibert's and Osorno's opinion. Cottonwood clearly delayed supplying Yellowstone with the new expert reports. The Ninth Circuit in *Wanderer v. Johnston* found prejudice where the defendant's actions "constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case." 910 F.2d 652, 656 (9th Cir. 1990). The Ninth Circuit noted that "[d]elay alone, without a focus on its effects" cannot justify a sanction. *Id.*

Some form of sanctions appears to be justified because admitting Dr. Glibert's and Osorno's opinions interferes with Yellowstone's ability to defend against Cottonwood's claims. Yellowstone has prepared its arguments around Cottonwood's initial theories outlined in Glibert's and Osorno's original expert reports. Cottonwood provided the data from the April 2025 site visit in July of

2025. Yellowstone had an opportunity to analyze the data and prepare defenses to what was found. Yellowstone claims, however, it did not anticipate new expert reports would be exchanged in late September 2025.

Rule 26(e) does not "create a loophole through which a party . . . who wishes to revise [its] disclosures in light of [its] opponent's challenges to the analysis and conclusion therein, can add them to [its] advantage after the court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Cottonwood cannot now bring forth new and additional theories to its case under the guise of Rule 26 supplementation without prejudicing Yellowstone. Cottonwood must bear the costs of rectifying this prejudice.

The fourth factor weighs slightly in favor of exclusion of Dr. Glibert's and Osorno's reports. "Public policy favors disposition of cases on their merits, but that policy has a procedural as well as a substantive component." *Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998). Data was likely to be obtained from the April 2025 site visit. Cottonwood should have the ability to try its case based on the data received from the April 2025 site visit. Cottonwood's fails to excuse its delays on relaying the information. Cottonwood had the data from the April 2025 site visit within a couple of months of the visit. Cottonwood did not seek

10

permission from the Court to file new reports based on the April 2025 site visit

until September 2025 when almost all the expert depositions had already been

conducted. Cottonwood had the opportunity to resolve the dispute by promptly

providing Yellowstone with the new reports. Cottonwood failed to do that.

The final factor also favors the imposition of some form of sanctions. The

Court in *Keener* previously noted the significance of adhering to a court scheduling

order:

> The public and the parties have an interest in expeditious resolution of
> litigation. Requiring the parties to comply with the Rules of Civil
> Procedure and with the Court's scheduling order promotes achieving
> such goals by eliminating the need for continuances. Setting forth
> deadlines allows a court to manage its docket; defendant did not request
> an extension within which expert disclosure could be submitted.

*Keener*, 181 F.R.D. at 642. The Court finds *Keener's* reasoning instructive.

Cottonwood did not request any extension with the Court before submitting new

expert disclosures for Dr. Glibert and Osorno. The Court determines that some

form of sanctions is warranted to "eliminat[e] the need for continuances" and

ensure "expeditious resolution" of this matter. *Id*.

The Court will deny Yellowstone's motion to exclude Dr. Glibert's and

Osorno's reports and opinions regarding the site visit data from April 2025. The

Court will allow Yellowstone to file supplemental reports related to the April 2025

site visit in response. Yellowstone shall file its supplemental reports no later than October 15, 2025. Cottonwood shall be allowed to reopen depositions of Yellowstone's experts if Yellowstone files supplemental reports related to the April 2025 site visit.

Yellowstone will be allowed to reopen the depositions of Dr. Glibert and Osorno for a period of no more than thirty minutes each to address issues raised in the supplemental reports. The parties may conduct the depositions by Zoom or other remote means. Cottonwood shall bear the reasonable costs of conducting the reopened depositions. Cottonwood also shall be allowed to depose Yellowstone's experts if Yellowstone files supplemental April 2025 site visit reports. Cottonwood will be allowed to reopen the depositions of Yellowstone's experts for a period of no more than one hour each to address issues raised in the supplemental reports. The depositions may be conducted by Zoom or other remote means. Cottonwood once again must bear the reasonable costs related to the reopened depositions. The parties will complete these depositions no later than October 31, 2025.

## II.    Cottonwood's violation of the Court's order—Social Media Posts

Yellowstone brought three social media posts to the Court's attention that it alleged violated the Court's previous orders (Doc. 69 and 99) relating to Cottonwood's continuous posting of related case information. (Doc. 107.)

Yellowstone takes issue with the following social media posts: (1) Dr. Patricia Glibert's expert report linked in Cottonwood's Instagram bio through Linktree; (2) Cottonwood's August 7, 2025, Instagram video post referencing the algae blooms in the Gallatin River; and (3) Cottonwood's May 14, 2025, Vimeo video caption referencing the dye tracer data collected from the Yellowstone golf course visit. (Doc. 108, Exhibits 1 and 5-7.) Cottonwood conceded that Dr. Glibert's expert report being found in Cottonwood's Instagram bio violated the Court's order. Cottonwood removed the link to Dr. Glibert's report on the day Yellowstone filed its motion to enforce on September 10, 2025. Cottonwood further conceded that the caption in the May 14, 2025, Vimeo video violated the Court's order. Cottonwood removed the disputed language from the Vimeo caption on the day Yellowstone filed its motion to enforce on September 10, 2025. Cottonwood's social media posts relating to Dr. Glibert's expert reports and the Vimeo video caption indicating the dye tracer results violated the Court's previous orders regarding extrajudicial statements made to social media. (Docs. 69 and 99.)

Cottonwood contends the August 7, 2025, Instagram post discussing Yellowstone's conduct of using treated sewage resulting in algae blooms in the Gallatin River does not violate the Court's order. The Instagram video in question states, "[t]he Gallatin River and its tributaries have been under attack by

13

unnecessary luxury developments. Treated sewage is infecting the Gallatin, causing algae blooms that spoil what was once pristine water . . . . [YC] and Spanish Peaks Mountain Club entered into an agreement with the Big Sky Water and Sewer District that requires the private resorts to dispose of up to 160 million gallons of treated sewage . . . . Algal blooms have been documented smothering parts of the river as it runs through Yellowstone Club property." The Court's previous order directed that "this order does not preclude Cottonwood from making statements alleged in the Complaint." (Docs. 69 at 12-13 and 99 at 4.) Cottonwood argues that the Instagram video only references allegations made in the Complaint. Cottonwood's amended complaint alleges that "The Gallatin River and its tributaries, including the South Fork/West Fork of the Gallatin River . . . have suffered from severe algae blooms for the last five years as a result of Defendant's golf course management practices" (Doc. 13 ¶ 3.) Cottonwood's Instagram video referencing algae blooms goes beyond the allegations contained in Amended Complaint. The Court concludes August 7, 2025, Instagram video violates the intent the Court's order. (Doc. 69 and 99.) Cottonwood shall remove the video from Instagram.

Future social media posts by Cottonwood referencing allegations in the Complaint must indicate that these allegations represent the opinions of

14

Cottonwood not assertions of undisputed facts. Cottonwood could avoid future disputes by wording the social media posts to not suggest that its posts contain issues of fact resolved through the court process. For example, Cottonwood should preface any social media posts referencing its complaint to be "allegations," "beliefs," or "Cottonwood's opinion."

Yellowstone also did not meet and confer with Cottonwood to explain what social media posts Yellowstone believed did not comply with the Court's order. Yellowstone could have resolved some of the disputes quickly by replying to Cottonwood on what social media posts it believed violated the Court's order. Cottonwood removed two of the three social media posts as soon as it was brought to their attention. Cottonwood conceded that having Dr. Glibert's expert report linked in its Instagram bio violated the Court's order. Cottonwood further conceded that the Vimeo video caption stating that "[t]he dye was found in the South/West Fork of the Gallatin River, establishing a hydrological connection between the Yellowstone Club's golf course and the River" directly violated the Court's order. Yellowstone could have attempted to resolve these issues with Cottonwood before filing its motion with the Court.

On the other hand, Cottonwood maintains the responsibility to monitor its social media accounts to ensure all Cottonwood social media posts comply with

the Court's order. It should not be Yellowstone's responsibility to bring the

violations to Cottonwood's attention. Simply suggesting that Cottonwood was

unaware that the social media posts violated the Court's order fails to present a

valid excuse. Cottonwood must make sure its actions, if it wishes to continue to

post on social media, complies with the Court's order. The Court previously

warned Cottonwood that further violation of the Court's order would result in

sanctions. The Court finds sanctions are warranted, given Cottonwood's continued

noncompliance.

        The court in *Hadley v. Perez*, found sanctions to be appropriate when the

party failed to comply with the court's order regarding extrajudicial statements and

social media posts. 2025 U.S. Dist. LEXIS 157609 at *6-7 (S.D. Fla. Aug. 4,

2025). The violating party removed all the social media posts that the movant

identified as violating the court's order. *Id*. The movant requested that its fees and

costs incurred from bringing the motion to compel compliance with the court's

order be paid by the violating party. *Id*. at *7. The parties agreed that the violating

party would pay $2,500 to the appropriate trust account at Holland and Knight

LLP. *Id*.

        The facts resemble *Hadley v. Perez*. Sanctions are warranted given

Cottonwood's continued noncompliance with the Court's orders. Yellowstone has

16

requested the Court order Cottonwood to pay its fees and costs incurred in enforcing the Court's orders. This is the second motion Yellowstone has had to file regarding Cottonwood's violation of the Court's order relating to social media postings. Cottonwood must pay $3,000.00 to Yellowstone's counsel, for having violated the Court's order. The Court advises the parties that any future violations of the Court's orders will result in the $500 per day sanction outlined in the Court's July 2025 order. (Doc. 99.) The Court further advises the parties to meet and confer directly before filing motions to the Court. Cottonwood must ensure what it puts on social media is complying with the Court's order.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** Yellowstone's motion to exclude Cottonwood's additional expert reports (Doc. 115) is **DENIED**.

**IT IS HEREBY ORDERED** Yellowstone's motion to enforce the Court's orders prohibiting extrajudicial statements (Doc. 107) is **GRANTED**.

1. Yellowstone shall file any response supplemental reports no later than October 15, 2025.

2. The parties shall complete any reopened depositions no later than October 31, 2025. The reopened depositions of Dr. Glibert and Osorno shall not exceed thirty minutes. The reopened depositions of Yellowstone's experts shall not exceed one hour.

3. Cottonwood shall bear reasonable costs associated with the reopening of the depositions as described in the Court's Order.

4. Cottonwood is ordered to remove the May 14, 2025, Instagram Video referencing the algae blooms in the Gallatin River.

5. Cottonwood shall pay $3,000.00 to Yellowstone's counsel for having violated the Court's January and July Orders (Docs. 69 and 99.)

6. Cottonwood shall pay the $3,000.00 to Yellowstone's counsel within sixty (60) days of this Order.

DATED this 1st day of October, 2025.

_____
Brian Morris, Chief District Judge
United States District Court

18