Ian McIntosh
CROWLEY FLECK, PLLP
1915 South 19th Avenue
P.O. Box 10969
Bozeman, MT 59719
Telephone: (406) 556-1430
imcintosh@crowleyfleck.com

Jonathan W. Rauchway (*pro hac vice*)
Andrea M. Bronson
Michael M. Golz
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, CO 80205
Telephone: (303) 892-9400
jon.rauchway@davisgraham.com
andrea.bronson@davisgraham.com
michael.golz@davisgraham.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | 2:23-cv-00026-BMM |
| *Plaintiff*, | **YELLOWSTONE MOUNTAIN CLUB'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF TIM COVINO AND FRED OFFENKRANTZ** |
| v. | |
| YELLOWSTONE MOUNTAIN CLUB, LLC, | |
| *Defendant*. | |

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ......................................................... ii

EXHIBIT INDEX .................................................................. v

INTRODUCTION .................................................................. 1

BACKGROUND .................................................................... 1

LEGAL STANDARD ............................................................... 4

ARGUMENT ...................................................................... 6

    I.     Covino merely summarizes Cottonwood's initial experts without independent testing or analysis, resulting in unreliable and cumulative opinions that were improperly offered as rebuttal. ............................................................... 6

    II.    Offenkrantz is unqualified, and his testimony should be excluded because it is unhelpful, unreliable, cumulative, and improper rebuttal. ......................................................... 12

CONCLUSION .................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Riverside Cnty.*,
No. EDCV 19-2083, 2023 U.S. Dist. LEXIS 42977, at *40 (C.D.
Cal. Mar. 13, 2023) ...........................................................................................10

*Avila v. Willits Envtl. Remediation Trust*,
633 F.3d 828 (9th Cir. 2011) .....................................................................12, 13

*Cantu v. United States*,
No. CV 14-00219 MMM, 2015 U.S. Dist. LEXIS 191395 (C.D.
Cal. Apr. 6, 2015) ........................................................................................5, 10

*Cholakyan v. Mercedes-Benz USA, LLC*,
281 F.R.D. 534 (C.D. Cal. 2012) ........................................................6, 7, 8, 16

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ....................................................................................4, 7

*Diviero v. Uniroyal Goodrich Tire Co.*,
919 F. Supp. 1353 (D. Ariz. 1996), *aff'd* 114 F.3d 851 (9th Cir.
1997) .............................................................................................................12

*Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*,
No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 62921 (D. Mont.
Mar. 31, 2021)...............................................................................................13

*Engilis v. Monsanto Co.*,
No. 23-4201, 2025 U.S. App. LEXIS 20377 (9th Cir. Aug. 12,
2025) ...............................................................................................................4

*Erhart v. Bofi Holding, Inc.*,
445 F. Supp. 3d 831 (S.D. Cal. 2020)..........................................................8, 16

*Exxon Mobil Corp. v. AECOM Energy & Constr., Inc.*,
No. CV 19-107-BLG-SPW, 2024 U.S. Dist. LEXIS 235077 (D.
Mont. Dec. 11, 2024) ...................................................................................6, 16

*Fosmire v. Progressive Max Ins. Co.*,
277 F.R.D. 625 (W.D. Wash. 2011) ............................................................7, 16

*Hunt v. McNeil Consumer Healthcare*,
297 F.R.D. 268 (E.D. La. 2014) ............................................................6, 7, 16

*Kostelecky v. NL Acme Tool/NL Indus., Inc.*,
837 F.2d 828 (8th Cir. 1988) ..................................................................8

*Krueger v. Wyeth, Inc.*,
No. 03cv2496-JAH (MDD), 2012 U.S. Dist. LEXIS 118987 (S.D.
Cal. Aug. 22, 2012).......................................................................6, 11, 18

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
523 F.3d 1051 (9th Cir. 2008) ..............................................................17

*Perfect 10 v. Giganews, Inc.*,
No. CV 11-07098-AB, 2014 U.S. Dist. LEXIS 185066 (C.D. Cal.
Oct. 31, 2014) ............................................................................9, 16

*Price v. Fox Entm't Grp., Inc.*,
499 F. Supp. 2d 382 (S.D.N.Y. 2007) ......................................................10

*Rogers v. Raymark Indus., Inc.*,
922 F.2d 1426 (9th Cir. 1991) ..............................................................5, 9

*Sharkey v. J.P. Morgan Chase & Co.*,
978 F. Supp. 2d 250 (S.D.N.Y. 2013) ......................................................8, 16

*Stilwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) ..............................................................16

*United States v. Bacon*,
979 F.3d 766 (9th Cir. 2020) (en banc) ....................................................5

*Wenjia Zhai v. Cent. Neb. Orthopedics & Sports Med., P.C.*,
No. 4:16-CV-3049, 2017 U.S. Dist. LEXIS 210907 (D. Neb. Dec.
22, 2017) ................................................................................11, 18

*Willink v. Boyne USA, Inc.*,
No. CV 12-74-BU-DLC, 2013 U.S. Dist. LEXIS 195849 (D. Mont.
Dec. 20, 2013)..............................................................................9

*Wyatt B. v. Brown*,
   No. 6:19-cv-00556-AA, 2022 U.S. Dist. LEXIS 147091 (D. Or.
   Aug. 17, 2022) ......................................................................................8

**Statutes**

The Clean Water Act, 33 U.S.C. § 1251 *et seq.* ...........................................1, 2, 9, 13

**Other Authorities**

Fed. R. Civ. P. 26 ...........................................................................................5

Fed. R. Civ. P. 37 ..................................................................................12, 18

Fed. R. Evid. 403 .....................................................................5, 9, 10, 17

Fed. R. Evid. 702 .....................................................................................*passim*

## <u>EXHIBIT INDEX</u>

Exhibit 1 –    Cottonwood Environmental Law Center's Rule 26(a)(2) Disclosures for Liability Experts

Exhibit 2 –    Cottonwood Environmental Law Center's Rule 26(a)(2) Rebuttal Expert Disclosures

Exhibit 3 –    Rebuttal Report provided on March 4, 2025 to Cottonwood Environmental Law Center in the case of Cottonwood Law Center vs. Yellowstone Mountain Club LLC

Exhibit 4 –    Excerpts of September 11, 2025 Deposition of Tim Covino

Exhibit 5 –    Expert Rebuttal Report Prepared for Cottonwood Environmental Law Center by Fred Offenkrantz

Exhibit 6 –    Excerpts of September 30, 2025 Deposition of Fred Offenkrantz

Defendant Yellowstone Mountain Club, LLC ("YC") submits this brief in support of its motion to exclude the testimony of Tim Covino and Fred Offenkrantz, experts for Plaintiff Cottonwood Environmental Law Center ("Cottonwood").

## INTRODUCTION

Cottonwood resorts to a new tactic in this case—attempting to sway the jury by presenting duplicative experts who have no opinions other than "Cottonwood's other experts are right, and YC's experts are wrong." These "rebuttal" experts, Dr. Tim Covino and Fred Offenkrantz, conducted no independent analysis of the facts or data in this case. They simply adopt the conclusions of Cottonwood's other experts wholesale and are unable to identify anything new or different in their opinions. Their reports merely summarize the opinions of Cottonwood's initial experts and invade the province of the jury by purporting to weigh the credibility of those opinions against those of YC's experts. This is not proper rebuttal and these opinions are unreliable, unhelpful, cumulative, and prejudicial. The Court should exclude the opinions of Covino and Offenkrantz.

## BACKGROUND

Cottonwood alleges that YC violates the Clean Water Act ("CWA") by discharging pollution into Second Yellow Mule Creek, the South Fork of the West Fork Gallatin River (the "South Fork"), and the Gallatin River. (Docs. 1; 13.) Cottonwood initially disclosed four experts to support its claims—Dr. Patricia

Glibert, Dr. Shannon Roback, Trevor Osorno, and Barry Dutton. (Cottonwood Environmental Law Center's Rule 26(a)(2) Disclosures for Liability Experts, attached as <u>Exhibit 1</u>.) In March 2025, Cottonwood disclosed rebuttal reports from these experts, plus two new experts offering "rebuttal" opinions—Dr. Tim Covino and Fred Offenkrantz. (Cottonwood Environmental Law Center's Rule 26(a)(2) Rebuttal Expert Disclosures, attached as <u>Exhibit 2</u>.)

Covino is an associate professor of watershed analysis at Montana State University. ("Rebuttal Report provided on March 4, 2025 to Cottonwood Environmental Law Center in the case of Cottonwood Law Center vs. Yellowstone Mountain Club LLC" at 5, attached as <u>Exhibit 3</u>.) Covino's report is a total of three pages long, not including his resume. (*Id.* at 2–4.) The primary opinion offered in Covino's report is that "Cottonwood's experts have shown beyond a reasonable doubt that [YC's] irrigation water . . . is reaching nearby flowing surface water in violation of the Clean Water Act." (*Id.* at 2.) Covino conducted no "independent testing or analysis" to reach this conclusion. (September 11, 2025 Deposition of Tim Covino at 11–12 (63:22–64:3), excerpts attached as <u>Exhibit 4</u>.) The only materials that Covino used to prepare his report were two of YC's expert reports, two of Cottonwood's expert reports, one 2013 publication, and one 2018 publication based on research from 2013. (*Id.* at 7–9, 14–15 (50:17–52:4, 75:22–76:16).) As Covino explained, his report is nothing more than a "short little two-page summary of kind

of [his] read of the rebuttals." (*Id.* at 6 (32:11–13).) Covino "was just asked to write a summary report of the rebuttals and that's what [he] did." (*Id.* at 10 (62:18–20).)

Fred Offenkrantz worked for the Montana Department of Environmental Quality for about two years over twenty years ago—from 2000 to 2002. ("Expert Rebuttal Report Prepared for Cottonwood Environmental Law Center by Fred Offenkrantz" at 2, attached as <u>Exhibit 5</u> ("Offenkrantz Report").) During that time, Offenkrantz considered new permit applications for suction dredging and fish farming operations, and handled permit renewals for existing wastewater treatment plants and industrial facilities. (September 30, 2025 Deposition of Fred Offenkrantz at 14–15 (25:15–26:7), excerpts attached as <u>Exhibit 6</u>.) Offenkrantz was not involved in reviewing unpermitted discharges and determining whether the facility needed a permit. (*Id.* at 19 (31:13–21).) Like Covino, Offenkrantz did not provide an initial expert report. (*See* Ex. 1.) Offenkrantz learned of this case through Cottonwood's Instagram posts, (Ex. 6 at 20–21 (32:8–33:25)), which the Court later found endangered YC's right to a fair trial, (*see* Doc. 69). Cottonwood disclosed Offenkrantz through its "Rebuttal Expert Disclosures" and included a report from him. (*See* Ex. 2.) The section of Offenkrantz's report titled "Opinions and Conclusions"—a little more than a single page— provides only quotations from the reports from Glibert and Dutton and brief summaries of the opinions expressed by Roback and Osorno, with no separate analysis of any of these issues. (Ex. 5 at 6–7.)

Offenkrantz did not conduct his own sampling, testing, calculations, or analysis. (Ex. 6 at 23–24, 26–29, 31–33 (39:25–40:20, 42:11–15, 43:7–10, 44:14–23, 45:3–15, 47:21–48:4, 51:18–25)).) As Offenkrantz explained: "I summarize the contents of [Cottonwood's other experts'] reports, and they summarize the samples." (*Id.* at 33 (51:11–17)).) Based solely on his review of the other expert reports, Offenkrantz opines that "[t]he Yellowstone Club's wastewater disposal system unequivocally requires a discharge permit." (Ex. 5 at 6.)

## LEGAL STANDARD

**Federal Rule of Evidence 702.**  For expert testimony to be admissible, the proponent must establish that the proffered opinion is:  (a) helpful; (b) "based on sufficient facts or data"; and (c) the "product of reliable principles and methods" that the expert has reliably applied to the facts of the case.  Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  "Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence."  *Engilis v. Monsanto Co.*, No. 23-4201, 2025 U.S. App. LEXIS 20377, at *17 (9th Cir. Aug. 12, 2025).  "Properly applied, Rule 702 requires that challenges to an expert's opinion go to the weight of the evidence only if a court first finds it more likely than not that an expert has a sufficient basis to support an opinion."  *Id.* at *13–14.  Failure to exclude expert

testimony that does not meet the requirements of Rule 702 may be grounds for a new

trial. *See United States v. Bacon*, 979 F.3d 766, 770 (9th Cir. 2020) (en banc).

**Federal Rule of Evidence 403.**  Federal Rule of Evidence 403 allows the

court to exclude relevant evidence if that evidence would unfairly prejudice or

confuse the jury, or would waste time because it is needlessly cumulative.  Fed. R.

Evid. 403.  "Even if the court finds a witness qualified under Rule 702, it may still

exclude testimony under Rule 403." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426,

1430 (9th Cir. 1991). "[U]nnecessarily similar and cumulative expert testimony may

create the risk that a jury will resolve differences in expert opinion by 'counting

heads' instead of by giving fair consideration to the quality and credibility of each

expert's opinions and thus weighs in favor of exclusion of cumulative evidence

under Rule 403 . . . ." *Cantu v. United States*, No. CV 14-00219 MMM (JCGx),

2015 U.S. Dist. LEXIS 191395, at *26 (C.D. Cal. Apr. 6, 2015) (quotations and

citations omitted).

**Federal Rule of Civil Procedure 26.**  Federal Rule of Civil Procedure

26(a)(2)(D)(ii) allows for the admission of rebuttal expert opinions "intended solely

to contradict or rebut evidence on the same subject matter identified by another

party" through their expert disclosures.  "Rebuttal is for the purpose of contradicting

an opinion.  Rebuttal designations and disclosures are not intended to provide a party

with the opportunity to select a more appealing expert, in terms of qualifications, to

present the same opinions provided previously by their initial experts." *Krueger v. Wyeth, Inc.*, No. 03cv2496-JAH (MDD), 2012 U.S. Dist. LEXIS 118987, at *12–13 (S.D. Cal. Aug. 22, 2012).

## ARGUMENT

I. **Covino merely summarizes Cottonwood's initial experts without independent testing or analysis, resulting in unreliable and cumulative opinions that were improperly offered as rebuttal.**

Covino's expert opinions are inadmissible on multiple grounds, primarily because they consist of nothing more than his summary and endorsement of Cottonwood's other experts' reports.

**Reliability.** Covino's opinions are not grounded in facts or data, or any reliable principles or methodology. Instead, they reflect his summarization of the expert reports in this case. (Ex. 4 at 10 (62:18–20).) "[E]xperts may not solely rely on the opinions of other experts." *Exxon Mobil Corp. v. AECOM Energy & Constr., Inc.*, No. CV 19-107-BLG-SPW, 2024 U.S. Dist. LEXIS 235077, at *8 (D. Mont. Dec. 11, 2024). This is because "[a]n expert's sole or primary reliance on the opinions of other experts raises serious reliability questions." *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) (collecting cases); *see also Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014) ("As many courts have recognized, expert testimony based solely or primarily on the opinions of other experts is inherently unreliable." (collecting cases)). Thus,

"[t]he rules do not permit an expert to rely upon opinions developed by another expert for purposes of litigation without independent verification of the underlying expert's work." *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011). "It is only when the expert undertakes some independent investigation of the underlying opinions that his testimony may be considered reliable." *Hunt*, 297 F.R.D. at 275 (collecting cases).

*Choylakan* is instructive. There, the court found an expert's opinion to be unreliable when the expert "conducted no independent testing," "replicated large portions of [another expert's] opinions and adopted them as his own," and "could not identify a single point of disagreement with [that expert]." *Cholakyan*, 281 F.R.D. at 545. Under these circumstances, the court found that the proponent failed to "adequately demonstrate that [the expert] exercised independent judgment," and held that "the court cannot rely on such 'testimony.'" *Id.* at 546.

Similarly, in *Hunt*, the court excluded an expert's opinion that was "based almost exclusively on the opinions of other experts." 297 F.R.D. at 275. Finding that the expert failed to "independently evaluate[] or verif[y] the opinions upon which he relies," the court concluded that the expert "did not undertake the kind of independent evaluation that *Daubert* and Rule 702 require." *Id.*

Covino's opinions are no different. As Covino explained, he "was just asked to write a summary report of the rebuttals and that's what [he] did." (Ex. 4 at 10

(62:18–20).)  His report is merely a "short little two-page summary of kind of my read of the [expert reports]."  (*Id.* at 6 (32:11–13); *see also* Ex. 3 at 2–4.).  Covino confirmed that he did not conduct any independent testing or analysis to reach his conclusions.  (Ex. 4 at 11–12 (63:22–64:3).)  Instead of conducting his own testing or analysis, Covino simply agreed with the analysis conducted by Glibert and did not identify any areas of disagreement with her report. (*Id.* at 12–13, 16 (64:4–11, 64:18–65:3, 86:13–19).)  Such opinions are not the product of reliable principles and methods.  Fed. R. Evid. 702(c); *See also Cholakyan*, 281 F.R.D. at 544–48.  Covino's opinions lack a sufficient basis, and should not be presented to a jury.

**<u>Usurping the Jury's Factfinding Role</u>.**  An expert cannot "simply rehash the evidence and assert that his analysis of the evidence leads to a particular conclusion." *Erhart v. Bofi Holding, Inc.*, 445 F. Supp. 3d 831, 847 (S.D. Cal. 2020); *see also Sharkey v. J.P. Morgan Chase & Co.,* 978 F. Supp. 2d 250, 252 (S.D.N.Y. 2013) ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702.").  "Under [Rule 702], evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible."  *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988).  "'[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations.'"  *Wyatt B. v. Brown*, No. 6:19-cv-00556-AA, 2022 U.S. Dist. LEXIS 147091, at *26 (D. Or. Aug. 17, 2022) (citation

omitted); *see also Perfect 10 v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist. LEXIS 185066, at *9 (C.D. Cal. Oct. 31, 2014) ("[E]xpert testimony that merely tells the jury what result to reach is inadmissible.' Nor is expert testimony helpful if it 'encroaches on the jury's vital and exclusive function to make credibility determinations.'" (citations omitted)).

Covino opines that "Cottonwood's experts have shown beyond a reasonable doubt that [YC's] irrigation water . . . is reaching nearby flowing surface water in violation of the Clean Water Act." (Ex. 3 at 2.) Covino's opinion is nothing more than an unsupported assertion that the opinions of Cottonwood's initial experts meet Cottonwood's burden to establish a CWA violation. Again, Covino conducted no independent analysis or testing to reach this conclusion. (Ex. 4 at 11–12 (63:22–64:2).) He has no personal knowledge of the underlying facts or data in this case. Covino simply reviewed the expert reports and asserts that they meet Cottonwood's burden. This evaluation of the weight of the evidence and credibility of the witnesses is reserved for the jury.

**Cumulative.** Expert testimony is subject to both Rules 702 and 403. *Rogers*, 922 F.2d at 1430. Accordingly, an expert's testimony may be barred if its probative value is outweighed by the danger of needlessly presenting cumulative evidence. Fed. R. Evid. 403; *see also Willink v. Boyne USA, Inc.*, No. CV 12-74-BU-DLC, 2013 U.S. Dist. LEXIS 195849, at *7 (D. Mont. Dec. 20, 2013) (barring "cumulative

expert testimony . . . on any subject," and explaining that "[i]dentical conclusions will not be permitted, regardless of the different backgrounds of those who offer them").

Covino's testimony is plainly cumulative.  Covino's report is merely a summary and reiteration of other expert reports, with no independent analysis. (*See* Ex. 3 at 3–4.)  It contributes nothing to the evidentiary landscape except to repeat the opinions of Cottonwood's experts who actually reviewed the facts and data. (*See id.*)  Cottonwood's attempt to "resolve differences in expert opinion by 'counting heads' instead of by giving fair consideration to the quality and credibility of each expert's opinions . . . weighs in favor of exclusion of cumulative evidence under Rule 403 . . . ."  *Cantu*, 2015 U.S. Dist. LEXIS 191395, at \*26.  Cottonwood designated four initial experts and four other rebuttal reports that are not the subject of this motion.  The Court should not allow expert testimony that just parrots the opinions of others.  Covino's testimony should be excluded as cumulative.  *Alves v. Riverside Cnty.*, No. EDCV 19-2083 JGB (SHKx), 2023 U.S. Dist. LEXIS 42977, at \*40 (C.D. Cal. Mar. 13, 2023) ("[T]he Court will not allow Defendants to put on expert testimony simply to repeat and reinforce the conclusions they would like the jury to draw from other expert testimony."); *Price v. Fox Entm't Grp., Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y. 2007) (excluding an expert because "there was

substantial overlap between [two experts'] reports, and there is absolutely no need for both experts to testify").

**Improper Rebuttal.**  Finally, Covino's report, which was first disclosed in Cottonwood's "Rebuttal Expert Disclosures," is improper rebuttal.  "Rebuttal is for the purpose of contradicting an opinion. Rebuttal designations and disclosures are not intended to provide a party with the opportunity to select a more appealing expert, in terms of qualifications, to present the same opinions provided previously by their initial experts." *Krueger*, 2012 U.S. Dist. LEXIS 118987, at *12–13.  "[P]roper rebuttal testimony should address only new arguments raised by the adverse party that could not have been anticipated previously.  Put differently, rebuttal testimony should not be a mere continuation of a party's case-in-chief." *Wenjia Zhai v. Cent. Neb. Orthopedics & Sports Med., P.C.*, No. 4:16-CV-3049, 2017 U.S. Dist. LEXIS 210907, at *5–6 (D. Neb. Dec. 22, 2017) (citations omitted).

Covino's opinions are a "mere continuation of [Cottonwood's] case-in-chief." *Id.*  Covino's report presents the same opinions provided by Cottonwood's other experts, just in summarized form.  Put differently, it "serve[s] merely to reassert Plaintiff's primary arguments in a different voice." *Krueger*, 2012 U.S. Dist. LEXIS 118987, at *12.  This is not proper rebuttal. *Id.* at *12–13.

Because Cottonwood failed to disclose Covino as an initial expert, Cottonwood "is not allowed to use [Covino] to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Cottonwood's failure to disclose Covino is neither. Cottonwood of course knew of the need to establish its case-in-chief. And Covino has been involved in this case since at least August 2024. (Ex. 4 at 5 (31:16–22).) Covino's late disclosure is not harmless. As discussed above, the addition of Covino's cumulative opinion risks a scenario where the jury resolves any dispute between Cottonwood's and YC's experts simply by "counting heads." This is particularly true when the additional expert is purporting to weigh the expert opinions in the case, and improperly opining that the weight of Cottonwood's expert testimony suffices to meet its legal burden.

## II. Offenkrantz is unqualified, and his testimony should be excluded because it is unhelpful, unreliable, cumulative, and improper rebuttal.

The Offenkrantz opinion fails every test of admissibility for expert opinion.

**Qualification.** Federal Rule of Evidence 702 requires that an expert be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011). "[A] court may exclude an expert who does not have the appropriate experience, education or training to offer a helpful opinion with regard to controverted issues." *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353, 1355 (D. Ariz. 1996), *aff'd* 114 F.3d 851 (9th Cir. 1997). The question is not simply

whether the witness is qualified as an expert in *something*, but whether the witness is qualified to give the opinion being offered. *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n*, No. CV 19-6-BLG-TJC, 2021 U.S. Dist. LEXIS 62921, at *5 (D. Mont. Mar. 31, 2021) ("Even though an expert may be qualified in one area of expertise, he still may be precluded from offering opinions beyond that area of expertise . . . ."). Put differently, an expert must "stay[] within the reasonable confines of his subject area" for his opinion to be admissible. *Avila*, 633 F.3d at 839.

Offenkrantz's opinion is that YC "should be required to obtain a MPDES permit for its irrigation of the Crushmore area and Yellowstone Club golf course" because "it is more likely than not that the Yellowstone Club is discharging effluent into the South Fork/West Fork of the Gallatin River and its tributaries." (Ex. 5 at 7.) Offenkrantz is not qualified to express this opinion. Offenkrantz worked for the Montana Department of Natural Resources and Conservation ("DNRC") from 2005 until he retired in 2022. (Ex. 6 at 9–10 (17:21–18:3).) His work at DNRC related to "administering water rights throughout the state." (*Id.* at 10–11 (18:24–19:2).) Offenkrantz's role at DNRC concerned water rights, and not water quality. (*Id.* at 12 (20:1–7).) This experience does not qualify Offenkrantz to provide opinions about discharges in violation of the federal Clean Water Act, and Offenkrantz does not claim that it does. Instead, Offenkrantz relies on his "previous experience as a MPDES permit writer" to support his opinion. (Ex. 5 at 7.)

Offenkrantz worked as a permit writer for the Montana Department of Environmental Quality for about two years, from 2000 to 2002, before going to graduate school. (Ex. 6 at 13–14 (23:10–19, 25:8–14).) In that role, Offenkrantz considered new permit applications from proposed suction dredging and fish farming applications, and wrote renewal permits for wastewater treatment plants and industrial facilities that were already permitted. (*Id.* at 14–15 (25:15–26:7).) Offenkrantz did not work in the enforcement arm of DEQ, and no part of his job involved examining facilities without an existing permit or pending permit application and determining whether those facilities required a permit. (*Id.* at 16, 19 (27:10–12, 31:14–21).)

Thus, Offenkrantz rests his opinion on a job that he held for about two years over twenty years ago. And this job did not even involve the subject matter of his opinion. Instead of considering whether an operation created a discharge to surface waters and therefore required a permit, he considered whether operations that indisputably involved discharges and had already applied for a permit should receive one. (*Id.* at 17–19 (29:19–31:21).) Offenkrantz has no knowledge, skill, experience, or training relevant to determining whether an entity "is discharging effluent" and "should be required to obtain a MPDES permit." (Ex. 5 at 7.) These opinions are outside of Offenkrantz's water-rights-related expertise, and should be excluded.

**Reliability.**    Moreover, Offenkrantz's opinions are unreliable for similar reasons as Covino's.  As with Covino, Offenkrantz's opinions reflect his summaries of other expert reports, with no independent verification of those experts' work.  The entirety of Offenkrantz's "Opinion and Conclusions" section is either a summary of another expert's conclusions, or block quotations from another expert's report.  (Ex. 5 at 6–7.)  Offenkrantz confirmed that he did not conduct independent sampling or testing in this case, nor did he confirm the analyses that he relied on.  (Ex. 6 at 23–24, 26–29, 31–33 (39:25–40:20; 42:11–15; 43:7–10; 44:14–23; 45:3–15; 47:21–48:4; 51:18–25)).)  Offenkrantz has never been to the site, and misunderstood the basic layout of the features at issue in this case.  (*Id.* at 22, 29–30, 32 (38:11–17, 45:19–46:2, 48:14–24) (stating that YC's Hole 4, Hole 6, and Hole 12 water hazards are "somewhere between 100 and 1,000 feet" away from the South Fork); *but see* Doc. 120 at ¶¶ 31, 34 (YC's statement of undisputed fact stating that the Hole 4 Pond pipe outlet is located more than 2,000 feet from the South Fork, and that the Hole 6 and Hole 12 Ponds are located more than 3,500 feet from the South Fork).)  Offenkrantz merely "assumed [the samples and analysis in Cottonwood's other expert reports] to be accurate."  (Offenkrantz Dep. at 51:18–25.)  He did not reach a single different conclusion as any of Cottonwood's experts.  (Offenkrantz Dep. at 24–29, 34, 36–38 (40:14–20, 41:4–8, 42:16–19, 43:11–14, 44:9–13, 44:24–45:2, 52:1–12, 57:8–11, 57:24–58:2, 58:13–16, 60:17–19).)  As Offenkrantz explained: "I

summarize[d] the contents of [Cottonwood's experts' reports] and they summarize[d] the samples." (*Id.* at 33 (51:11–17).) Rule 702 does not allow such opinions. *See, e.g.*, *Exxon Mobil Corp.,* 2024 U.S. Dist. LEXIS 235077, at *8; *Hunt*, 297 F.R.D. at 275 (collecting cases); *Cholakyan*, 281 F.R.D. at 544 (collecting cases); *Fosmire*, 277 F.R.D. at 630.

**Helpfulness.** Rule 702 requires that an expert's opinion be helpful to the factfinder. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

Offenkrantz's opinion is not helpful. Like Covino, Offenkrantz does nothing more than summarize the analysis conducted by Cottonwood's experts with no independent verification. Thus, Offenkrantz's opinion that "[YC's] responses to [Cottonwood's] allegations do not disprove them" is simply a credibility determination—not the result of any reliable scientific method or principle. (Ex. 5 at 6.) This "rehash[ing of] the evidence" and "assert[ion] that his analysis of the evidence leads to a particular conclusion" is not permitted under Rule 702. *Erhart*, 445 F. Supp. 3d at 847 (S.D. Cal. 2020); *see also Sharkey,* 978 F. Supp. 2d at 252 ("Simply rehashing evidence about which an expert has no personal knowledge is impermissible under Rule 702."); *Perfect 10*, 2014 U.S. Dist. LEXIS 185066, at *9 ("'[E]xpert testimony that merely tells the jury what result to reach is inadmissible.' Nor is expert testimony helpful if it 'encroaches on the jury's vital and exclusive function to make credibility determinations.'" (citations omitted)). This is

particularly true when Offenkrantz could not even recall which of YC's expert reports he read, or which reports his statement was referring to. (Ex. 6 at 35 (55:9–21).)

Moreover, it's not clear whether Offenkrantz even engaged with the analyses of the expert reports that he summarizes. Offenkrantz testified as follows:

> Q: You're just saying that if all of [Cottonwood's other expert reports are] accurate, your opinion is that YC needs an MPDES discharge permit; is that [right?]
> A: [T]hat is precisely a one-sentence summary of what this six-page document says right there.

(*Id.* at 34 (52:13–19).) That is, Offenkrantz accepted Cottonwood's experts' conclusion that a discharge to surface water was occurring without question, and then drew the legal conclusion that this assumed discharge required a permit. This legal determination is for the Court to explain and for the jury to decide. *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

**<u>Cumulative.</u>** For the same reasons explained with respect to Covino, Offenkrantz's testimony is needlessly cumulative under Rule 403. As discussed, Offenkrantz's testimony lacks probative value—Offenkrantz is not qualified to give the opinions disclosed; those opinions are not based on facts, data, or accepted methodology; and his opinions are not helpful because they invade the province of the judge and jury. And, like Covino's report, Offenkrantz's report is merely a

summary and reiteration of other expert reports with no independent analysis. Offenkrantz's testimony should be excluded as cumulative.

**Improper Rebuttal.**  Finally, like Covino's report, Offenkrantz's report is improper rebuttal.  Offenkrantz opines that YC "should be required to obtain a MPDES permit for its irrigation of the Crushmore area and Yellowstone Club golf course." (Ex. 5 at 7.)  This is, of course, Cottonwood's case-in-chief.  (*See, e.g.*, Doc. 13 at 11–12, ¶ 41.)  To say that Offenkrantz's report "address[es] . . . new arguments raised by [YC] that could not have been anticipated previously" strains credulity.  *Wenjia Zhai*, 2017 U.S. Dist. LEXIS 210907, at *5–6.  Instead, Cottonwood simply seeks "to reassert Plaintiff's primary arguments in a different voice." *Krueger*, 2012 U.S. Dist. LEXIS 118987, at *12.  This is not proper rebuttal. *Id.* at *12–13.

Again, because Cottonwood failed to disclose Offenkrantz as an initial expert, Cottonwood "is not allowed to use [Offenkrantz] to supply evidence . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). Cottonwood's failure to disclose Offenkrantz is neither.  As discussed, Offenkrantz's report is a mere continuation of Cottonwood's case-in-chief.  If Cottonwood wanted an expert opinion on the necessity of a permit, there is no reason it could not have disclosed that opinion with its initial reports.

## **CONCLUSION**

For the foregoing reasons, YC requests that the Court grant the Motion to Exclude Expert Testimony of Tim Covino and Fred Offenkrantz.

DATED this 13th day of October, 2025.

CROWLEY FLECK PLLP

*/s/ Ian McIntosh*
Ian McIntosh

DAVIS GRAHAM & STUBBS LLP

*/s/ Jonathan W. Rauchway*
Jonathan W. Rauchway

*Attorneys for Defendant Yellowstone Mountain Club, LLC*

## CERTIFICATION OF COMPLIANCE

The undersigned certifies that the foregoing document complies with Local Rule 7.1(d)(2). The Brief contains 4,413 words, excluding the caption, certificate of compliance, and certificate of service. The undersigned relied on the word count of the word-processing system used to prepare the brief.

*/s/ Beatriz Esparza*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this 13th day of October, 2025.

[ ]  U.S. Mail          John Meyer
[ ]  FedEx             Cottonwood Environmental Law Center
[ ]  Hand-Delivery    P.O. Box 412
[ ]  Facsimile         Bozeman, MT 59771
[X]  ECF               john@cottonwoodlaw.org
[ ]  Email

*Attorney for Plaintiff*


*/s/ Beatriz Esparza*