John Meyer
MT Bar No. 11206
COTTONWOOD ENVIRONMENTAL LAW CENTER
P.O. Box 412 Bozeman, MT 59771
John@cottonwoodlaw.org
406.546.0149

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER,<br><br>    *Plaintiff*,<br><br>v.<br><br>YELLOWSTONE MOUNTAIN CLUB LLC,<br><br>    *Defendant*. | 2:23-CV-00026-BMM<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS OF DR. GLIBERT** |

## INTRODUCTION

After failing to persuade the Court to exclude Dr. Glibert's supplemental report, Defendant Yellowstone Mountain Club ("YC") has now filed an extraordinary motion at the eleventh hour to exclude expert opinions of Dr. Patricia Glibert because they are based on "junk science." Doc. 122 at 1. Dr. Glibert received her Ph.D in organismal biology from Harvard University in 1982, is an independent researcher, and a professor of phytoplankton ecology at the University of Maryland. Doc. 63-5 at 31; Doc. 122-2 at 5). Dr. Glibert is the sole author of a research textbook

1

that was published in 2024 entitled, "Phytoplankton Whispering: An Introduction to the Physiology and Ecology of Microalgae." Doc. 63-5 at 32. She currently serves as a referee for a peer-reviewed journal that focuses on algae and nitrogen. *See* Ex. 1 at 188: 14-20.

## BACKGROUND

Cottonwood completed a Rule 34 Investigation of YC property during which time YC would not allow Cottonwood to place a tracer dye in its Hole 4 water hazard or Clubhouse Pond. Doc. 68. During the investigation, water samples of the Hole 4 water hazard and Clubhouse Pond were collected and sent to Dr. Glibert. The samples were then filtered and Dr. Glibert sent the microalgae that was collected to UC Davis for isotopic analysis. Doc. 122-2 at 18. Dr. Glibert then interpreted the isotopic data and determined the Hole 4 water hazard contained 16.4 % treated effluent while the Clubhouse Pond contained 34.2% treated sewage on August 20, 2024. Doc. 122-3 at 5. The below photo of the Clubhouse Pond shows the algae containing the treated sewage. Doc. 52 at 4.



Despite YC's continuous insistence that the Clubhouse Pond is "freshwater", photos taken during the Rule 34 site inspection show the Clubhouse Pond is covered in algae. Doc. 52 at 4. YC uses probiotic scrubber to kill the algae. Ex. 1 at 104: 19-21. YC now seeks to prevent Dr. Gilbert from providing expert testimony regarding isotope tracing and estimation of reclaimed water proportions in the Hole 4 water hazard and Clubhouse Pond. Doc. 121.

## LEGAL STANDARD

Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The Ninth Circuit has cautioned that because FRE 403 'permits the trial court to exclude otherwise relevant evidence[,]' it is 'an extraordinary remedy to be used sparingly[.]'" *Thomsen v. Naphcare, Inc.*, 2022 U.S. Dist. LEXIS 45139 at *5 (D. Or. 2022) quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987).

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. 509 U.S. 579 (1993). The rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in LeFlore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As *Daubert* noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. The Federal Rules are broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. *See, e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 160 (3d Cir. 1999). The "focus, of course, must be solely on the principle and methodology, not on the conclusions they generate." *Daubert,* 509 U.S. at 595.

## ARGUMENT

### I. Dr. Glibert's Methodology is Reliable and the Time to Challenge Her Conclusions is at Trial.

YC has asked the Court to exclude the opinions of Dr. Glibert regarding nitrogen isotope tracing and estimation of reclaimed water proportions using chloride. Doc. 122 at 16. "For scientific evidence to be admissible, the proponent must show the assertion is derived by [a] scientific method." *City of Pomona v. SQM N. Am. Corp.*,

4

750 F.3d 1036, 1044 (9th Cir. 2014) (Internal citation and quotation omitted). "A disagreement over, not an absence of, controlling standards is not a basis to exclude expert testimony." *Id.* at 1045 (Internal quotation and citation omitted).

YC cites to a paper from Kendall et al. (2008) to claim that Dr. Glibert wrongly adjusted her nitrogen isotope range from 10 to 7 to fit the results of the data. Br. at 8-11. YC conveniently excluded the portion of Dr. Glibert's deposition where she explained that "the literature does not use a strict 10 or 7 cutoff. We are talking about a continuum of responses. […] [a]nd there are multiple examples there where the enrichment is greater than five, where there is wastewater loading."Ex. 1 (Glibert Depo) at 56: 14-24. YC argues, "[n]o reasonable expert in her field could reach the same conclusions." *See* Br. at 1. Cottonwood expert and MSU professor Dr. Tim Covino was asked during his deposition, "Q. You agree with Dr. Glibert's isotopic analysis? A. Yes." Doc. 124-4 at 64: 22-24. "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). The time for YC to challenge Dr. Glibert expert opinions is at trial. *Id.*

YC argues that Dr. Glibert's Chloride Opinion should be excluded because it is not the "product of reliable principles and methods." Br. at 22 (Citation omitted). YC argues that Dr. Glibert's Chloride Opinion methodology was unscientific and

5

did not identify any peer-reviewed literature or studies that employed her methodology. Br. at 22. In her report, Dr. Glibert used a methodology commonly referred to in hydrology as a mixing model. Ex. 2 at 74: 6-10. Dr. Glibert cites two papers authored by Cottonwood expert and MSU professor, Dr. Covino, that both employed mixing model methodology similar to what she used in her report. Doc. 122-3 at 13. Cottonwood expert and MSU professor, Dr. Covino, talked about and explained the legitimacy of this mixing model methodology over 10 times during his deposition. Ex.2 at 17:4-9; 74: 1-12; 78: 6-7; 82: 12-25; 91: 16-25; 93: 5-24.

Dr. Glibert explained during her deposition that she used isotopic analysis for chloride as an additional line of evidence to support her conclusions. Ex. 1 at 158: 15-20. Chloride was used because it is "a classic conservative tracer". Ex. 1 at 158: 2-3. YC admits in its brief that its expert, Mr. Stringer, agrees that chloride is a non-reactive element that exists in YC's reclaimed water. Br. at 21. Dr. Glibert explained in her deposition that the Montross study also used Chloride isotope tracing. Ex. 1 at 159: 18-26.

YC argued that Dr. Glibert "did not account for other sources [of chloride], even though it is undisputed that other sources, such as deicer and fertilizer, exist on YC's property." Br. at 22 (Citation omitted). However, Dr. Glibert addresses rock weathering, road salt and deicer, rain, and fertilizer in her deposition, and explained why each is not responsible for the elevated chloride levels. Ex. 1 at 159-161: 18-5.

YC claims Dr. Glibert should not be able to offer expert opinion regarding chloride because her calculations for other constituents contradicts her chloride calculations. Br. at 23. YC argues "Dr. Glibert scrapped those other analyses and decided—without any justification whatsoever—that chloride was the only valid tracer." Br. at 24. Dr. Glibert explained why she did not use the other constituents—they are not conservative tracers. *E.g.*, Ex. 1 at 182-185 (explaining TDS, DOC, carbonate, and sulfate are not conservative tracers); *see also* Ex. 1 at 185: 16. (explaining there were no other "readily available" conservative tracers). Dr. Glibert explained that the important calculation is the one based on the conservative tracer. Ex. 1 at 183: 23-24.

Dr. Glibert and Dr. Covino both act as referees on peer-reviewed journals that publish on these topics. *See* Ex. 1 at 188: 14-20; Ex. 2 at 190: 13-17. Both Dr. Glibert and Dr. Covino testified during their depositions that if Mr. Stringer submitted his report for publication in their journals, they would not accept it because of its "fundamental flaws". Ex. 1 at 191: 9-14; Ex. 2 at 93: 1-2. Dr. Covino pointed to a "lack of understanding of process" by Mr. Stringer on the matter. Ex. 2 at 93: 3-4.

## CONCLUSION

For the foregoing reasons, the Court should deny the YC's motion to exclude the challenged opinions of Dr. Glibert.

Respectfully submitted this 27th day of October 2025.

/s/ John Meyer
JOHN MEYER

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on all registered CM/ECF users on this 27th day of October, 2025.

/s/ John Meyer
JOHN MEYER

*Attorney for Plaintiff*

8